## HUFF v. LATIMER.

1. In action by a tenant to recover personal property seized by the executors of the landowner for rent, which had been paid by plaintiff to one from whom he claimed to have leased the land, such person is not disqualified from testifying to communications and transactions with the deceased landowner, as he is not a party to the action nor interested in its result (plaintiff having acknowledged his tenancy to witness and paid rent), and as the action is not against the executors but against the defendants individually.

2. It rests in the discretion of the trial judge to refuse to permit witnesses to be recalled to the stand for further cross-examination ; and where the purpose is on such recall to lay the foundation for a contradiction, and the judge refuses the application because counsel had neglected to lay such foundation at the proper time, although then reminded of the necessity of so doing, his discretion was properly exercised.

3. Error cannot be imputed to the trial judge in refusing to entertain a motion for non-suit after defendant's first witness had been sworn and partially examined, especially where no sufficient ground is suggested in support of a non-suit.

4. Where rent is payable in a certain number of pounds of lint cotton, it is rent certain and is not "crops" which may be claimed by the executors as emblements.

5. Rent not due at the time of the landlord's death passes to the devisee of the landlord and not to the executor ; and this rule of the common law is not affected by the statute (Gen. Stat., § 1927) which gives to the executor as assets of the deceased the crops on the lands in the occupation of any person, who dies after March 1 in any year.

Before Fraser, J., Greenville, November, 1889.

Action by Richard Huff against Joseph P. Latimer and John H. Latimer and P. D. Gilreath, for the recovery of 863 lbs. of seed cotton. The defendants claimed to have seized the cotton for rent due by plaintiff to Hewlett Sullivan, payable on October 1, 1887, the said Sullivan having died May 30, 1887, and having appointed the defendants, the Latimers, executors. Gilreath was the sheriff who made the seizure on October 4, 1887. The action was commenced in November, 1887. The opinion states the case. .

*Messrs. Irvine & Mooney* and *Wells & Orr*, for appellant.

*Mr. A. Blythe*, contra.

July 4, 1890.   The opinion of the court was delivered by

MR. JUSTICE McIVER.   The plaintiff brought this action to recover damages for the alleged unlawful seizure of certain seed cotton, the property of plaintiff.   The two Latimers, it appears, are the executors of the will of Hewlett Sullivan, and the defendant, Gilreath, was the sheriff, and the defendants undertook to justify the seizure of the cotton under a warrant issued by the clerk to enforce a lien for rent.   The allegation on the part of the defence was that the plaintiff was the tenant of said Hewlett Sullivan for the year 1887, on a tract of land known as the Joyce place, and that said Hewlett Sullivan having died after the 1st of March, 1887, the rent was due to his executors.   To this plaintiff replied, 1st, that Hewlett Sullivan had, in his life-time, given the land to one Nabors, of whom plaintiff was tenant.   2nd. That the land in question having been devised by said Sullivan to said Nabors, he thereby became entitled to receive the rent, and that the same had been paid to Nabors by the plaintiff.

Upon these issues both parties introduced testimony, which was conflicting; and when Nabors was asked as to the arrangement between himself and Sullivan as to the land, his testimony was objected to as incompetent under section 400 of the Code, which objection was overruled.   After the plaintiff had closed his testimony and the defendants had put up their first witness, and had proceeded with his examination to a certain point, defendants' counsel inquired of the court whether they would be allowed at that stage of the case to argue a motion for a non-suit, to which the court replied that it was then too late.   Counsel for defendants having omitted to lay the proper foundation for the contradiction of two of plaintiff's witnesses in the progress of their cross-examination, he asked, after having introduced all of his testimony, to be allowed to recall these two witnesses of plaintiff for the purpose of laying the proper foundation for the contradiction of said witnesses.   This request the court declined to comply with, saying, "For I warned you at the outset to lay the foundation, and I cannot now allow you to lay the foundation.   It is two late."

The jury were instructed in substance as follows: 1st. That if they came to the conclusion that the land in question had been devised by Hewlett Sullivan to Nabors, then he had the right to the rent for the year 1887, and the executors had no claim thereto. 2nd. That if they came to the conclusion that Sullivan put Nabors in possession of the land in his life-time, with permission to plant or rent the land for his own use, then Nabors would have been entitled to the rent in question, and the executors of Sullivan would have no claim thereto.

The jury rendered a verdict in favor of plaintiff, and defendants appeal substantially on the following grounds: 1st. Because of error in receiving the testimony of Nabors as to transactions and conversations between himself and Sullivan, in violation of section 400 of the Code. 2nd. Because of error in refusing to allow defendants' counsel to recall two of plaintiff's witnesses for the purpose of laying the foundation to contradict them. 3rd. Because of error in refusing permission to argue the motion for nonsuit. 4th. Because of error in refusing to charge as requested, "that the rent being payable in kind was 'crops,' and therefore emblements and properly collectible by the executors." 5th. Because his honor held that the devisee had the legal right to collect this rent; whereas it is respectfully submitted, the executors were the proper parties to collect, no matter who was eventually entitled to enjoy.

The first ground of appeal cannot be sustained, for Nabors was no party to the action, nor had he any legal or equitable interest which could be affected by the action. It is argued that plaintiff having paid the rent to Nabors, would have a right to recover it back from him if he failed in the present action, and hence Nabors had an interest that the plaintiff should succeed in this case. In view of the fact asserted by the plaintiff in this case that he had rented from Nabors, and not from Sullivan, we do not see how, in any event, he could dispute Nabors' title. If he saw fit to make a contract with Nabors for the rent of the land, he would be bound to perform his contract, and would not be in a position to dispute the right of Nabors to receive the rent. But more than this: the action was not against the defendants as executors of Sullivan, but against them as individuals for a trespass com-

mitted by them as such, and the rule is well settled that this section of the Code must receive a strict construction. *Guery* v. *Kinsler*, 3 S. C., 423; *Cantey* v. *Whitaker*, 17 *Id.*, 527.

The second ground clearly cannot be sustained. The request to recall the witnesses was addressed to the discretion of the court purely, and therefore not a matter for us; but when the reason assigned by the Circuit Judge for declining to accede to the request is considered, it is very manifest that his discretion was properly exercised in this case.

So, too, as to the third ground. Defendants having failed to make their motion at the proper time, certainly had no legal right to do so afterwards; and when, in addition to this, we see nothing in the case upon which such a motion could have been sustained, and appellants' counsel, in their argument here, have failed to suggest any ground upon which a motion for non-suit could have been granted, even if made at the proper time, we can have no hesitation in overruling the third ground of appeal.

As to the fourth ground, it would be sufficient to say that we do not find in the "Case" any evidence that any such request to charge as is there referred to was ever made; but we may add that even if such request had been made, it should have been refused. The fact that the amount of the rent agreed upon was expressed in pounds of lint cotton instead of dollars, certainly would not make such rent "crops" in the sense contended for.

The only remaining inquiry is, whether there was any error on the part of the Circuit Judge in instructing the jury that the devisee, and not the executors, was entitled to rent. There can be no doubt that at common law, where the landlord dies intestate before the rent becomes due, the rent goes to the heir (3 Kent, 463, cited in *Moore* v. *Turpin*, 1 Speer, 37); and this doctrine was recognized by the Court of Equity in *Kirkpatrick* v. *Atkinson*, 11 Rich. Eq., 31. See also 1 Wms. Ex'ors, 583 (2 Am. edit.); 2 Wash. Real Prop., 254. There is as little doubt that where the landlord dies testate the rent goes to the devisee and not to the executor. Indeed, the rights of the devisee to emblements seemed to be higher than those of the heir; for while the rule was that in such a case the personal representative was entitled to the emblements as against the heir, yet it was different as to a de-

visee whose right was superior to that of the executor.    This distinction in favor of the devisee, though characterized by Lord Ellenborough as capricious, seems nevertheless to have been well settled.  See 1 Wms. Ex'ors, 496–98, and *Dennet* v. *Hopkinson*, 63 Me., 350 ; s. c., 18 Am. Rep., 227, and the authorities there cited.    Where, however, the rent had already accrued during the life-time of the landlord, or where the same had been secured by the note or other obligation of the tenant, made payable to the landlord, the rule would be different.

This being the rule at the common law, the remaining inquiry is whether it has been abrogated or modified by statute.    This, it is claimed, has been done by the act of 1789, now incorporated in General Statutes as section 1927, which reads as follows: "If any person shall die after the first day of March in any year, the crop on the lands which were in the occupation of the deceased shall be assets in the executors' or administrators' hands, subject to debts, legacies, and distribution, the taxes and expenses of cultivation of such crop being first paid."    We agree with the Circuit Judge that this statute has no application to a case like the present, but was intended to apply only to a case where the decedent, after having planted or made provision for planting a crop, dies before the crop is gathered, and was not intended to apply to a case where the decedent had rented out his lands to others. The terms used in the statute, as well as the surrounding circumstances, of which the court may take judicial notice, show this. The act speaks of "the crop on the lands which were in the occupation of the deceased," and was manifestly intended to convey the idea that where one had planted a crop and died before such crop was gathered, it should nevertheless, although in fact a part of the realty, be regarded as personal assets, probably because it was due largely to the use of decedent's personal property—his horses, mules, plantation implements, &c.—and was not due alone to land—real estate—upon which it grew.    It also uses the terms "lands which were in the occupation of the deceased," implying that it had reference only to lands in his own personal use, and had no reference to lands rented to another, upon which he had not expended or employed any of his personal property, and which were not in his occupation, but were occupied by his tenants.

Again, the act speaks of the crop, not of the rent, and to extend its terms so as to embrace the latter would be violative of the plain rules of construction. The rule at common law being that everything attached to or growing on the land at the time of its conveyance by the devise would pass under the conveyance to the devisee, the statute designed to limit this rule must be confined to the purposes expressly stated, and not extended by implication to anything beyond.

It seems to us, therefore, that the jury were properly instructed that the devisee was entitled to the rents in this case which had not accrued at the time of the death of the devisor, and had not been converted by him into the form of a written obligation to pay a specific sum of money.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.