State vs. Walsh et als.

## No. 11,130.

### THE STATE OF LOUISIANA VS. FRANK JONES.

Same as in cases 11,128, 11,129, State vs same defendant.

## No. 11,087.

### THE STATE OF LOUISIANA VS. MICHAEL WALSH ET ALS.

1. The requirements to the entry of an order on the minutes, under Act 138 of 1877, are satisfied when the entry is made under the direction of the trial court, by the minute clerk, and the minutes are approved and signed by the judge.

2. The purpose being to lead the mind of the witness to the subject of the inquiry, the question is not leading in the legal sense of the word.

3. Proving the impulsive exclamations of third parties at the time of finding inculpatory testimony, a short time after the homicide, does not warrant the setting aside of the verdict. The defendant subsequently admitted all that was proven.

4. The latitude of a cross-examination will not be extended so as to allow the accused to introduce testimony without his having laid the foundation required by the rules of evidence.

5. Evidence of threats by deceased, not communicated to accused, is not admissible; the proof being, as stated by the trial judge, that the conflict was provoked by the accused.

6. An accused who testifies in his behalf is subject to the same duties, liabilities and prerogatives as other witnesses; he may be examined, cross-examined, impeached, corroborated. The testimony shall be weighed and considered according to the general rules of evidence, and the trial judge shall so instruct the jury.

7. A new trial will not be granted on the ground of misdirection unless the jury was misled.

State vs. Walsh et als.

APPEAL from the Criminal District Court for the Parish of Orleans.
• *Moise, J.*

*M.˙J. Cunningham*, Attorney. General, and *Lionel Adams*, Assistant District Attorney, for the State, Appellee:

1.  The requirements of Act No. 138 (E. S.) of 1877, that the judge shall enter an order upon the minutes directing the criminal sheriff, whenever in the opinion of the judge, in a case fixed for trial, talesmen will be required to draw such number of jurors as in the opinion of the court may be necessary to complete the jury, is fully satisfied when the order is entered on the minutes, under the direction of the presiding judge, by the minute clerk, and the minutes are approved and signed by the judge.    Century Dict., p. 1496; 1 Bouvier Law Dict. 592; 1 Rap. and Law, Law Dict., p. 446; And. Law Dict., p. 405; 6 Am. and Eng. Ency. of Law, p. 469; And. Law Dict., p. 679; 15 Am. and Eng. Ency. of Law, p. 618; Act 30 of 1880.

2.  No defect or irregularity in the drawing and summoning of grand or petit jurors shall be sufficient cause to challenge the array unless it is made to appear that some fraud has been practised, or some great wrong committed that will work great and irreparable injury.  Acts of 1873, p. 168; Act 44 of 1877, Sec. 11; 26 An. 579; 31 An. 91; 32 An. 34; 33 An. 1362; Ib. 1414; 34 An. 119; 35 An. 1098; 37 An. 376; 38 An. 459.

3.  In order to bring a witness as soon as possible to the material points on which he is to speak, examining counsel may recapitulate to him the acknowledged facts of the case which had already been established.  1 Greenl. Ev., Sec. 434; 2 Tayl., Secs. 1196, 1454.

4.  It is a well settled and universal rule of practice that a conviction will not be set aside and a new trial granted merely because of immaterial or harmless errors, which could not have prejudiced the accused in any way.  Whart. Cr. P. and P., Sec. 793; 1 Bish. Cr. Pr., Secs., 1275, 1277; 3 Gra. and Wat. N. T., p. 826; 9 Am. and Eng. Ency. Law, p. 755; 11 An. 480; 16 An. 384; 30 An. 1171; 35 An. 970.

5.  It is not error of sufficient importance to warrant the interference of the revisory tribunal. that the trial court permitted a question to be propounded, notwithstanding objection thereto, which was intended to elicit statements made by third parties at the time of the finding of inculpatory evidence, when the answer of the witness was that he heard no such statement.
Nor when the fact sought to be established is afterward admitted to be true.

6.  Evidence of previous threats is inadmissible unless a proper foundation is first laid by proof of some overt act or hostile demonstration made by the deceased at the time of the fatal encounter. Whart. Cr. Ev., Secs. 657, 757. ; 2 Bish. Cr. Pr., Sec. 627; 9 Am. and Eng. Ency. of Law, p. 674; 37 An. 443; Ib. 490; Ib. 640; 38 An. 20; 36 An. 671; 48 Ib. 86; An. 617; 42 An. 754; Ib. 939; 43 An. 841; 44 An. 161.

7.  Where the proof is that the conflict was provoked by the accused, who were the first assailants and commenced the attack with dangerous weapons at a time when they were in no danger, either actual or impending, evidence of threats, whether communicated or uncommunicated, is not admissible. 37 An. 443; Id. 640; 38 An. 20; 39 An. 671; 41 An. 86; Id. 617; Id. 939; 43 An. 841 ; 44 An. 161.
If admissible at all, such testimony can only be heard where the question as to who was the aggressor is left in doubt.  2 Bish. Cr. Pr., Sec. 627; Whart. Cr. Ev., Sec. 757; 9 Am. and Eng. Ency. of Law, p. 674; State vs. Jefferson, 43 An. 998.

State vs. Walsh et als.

8, Where there is any evidence supporting a plea of self-defence the trial court is required to instruct the jury as to the principles of law which apply, and has no anthority to pass upon the weight or value of the evidence which has gone to the jury.

But there is a class of cases to which a different rule applies, viz., those involving rulings of the judge in the course of the trial upon the admissibility of evidence, such as whether the proper foundation had been laid for evidence of character, threats, etc. In such cases, it is the necessary function of the judge, for the guidance of his own action, in a matter addressed exclusively to his own discretion, to determine whether the foundation has been laid, and, for that purpose, to consider and weigh the evidence in support thereof. Hence, it was held that, as the foundation must rest on proof of the antecedent conditions required, it is in the sound discretion of the judge to determine whether such proof has been made. State vs. Labuzan, 37 An. 491; State vs. Janvier, Ib. 645; State vs. Ford, Ib. 461.

But when the evidence is closed and the case has gone to the jury, it is the latter's exclusive province to consider all the evidence before it and to determine its weight and credibility; and it is the judge's duty to charge the law applicable to any state of facts supported by evidence, whether he believes or attaches value to such evidence or not. State vs. Tucker, 38 An. 539, 540.

9. The bill of exceptions must set out the facts to which a charge was pertinent, in order to show that instructions were asked, for that would have had a material bearing on the case, and that the trial court was not asked to charge the jury upon abstract principles of law. 35 An. 774; Ib. 1043; 37 An. 77; Ib. 576; 6 An. 286; 10 An. 264; 12 An. 679; 22 An. 425; 34 An. 1034; 3 Gra. and Wat. N. T. p. 17.

10. A new trial will not be granted on the ground of misdirection, if the error does not affect the just result, and if substantial justice has been done. 95 An. 974, 975; 6 An. 658; 2 Thomp. Trials, Secs. 2401, 2402, 2403; 7 An. 284; 8 An. 116; 32 An. 621; 28 An. 170; 33 An. 391; 35 An. 1103.

### *A. D. Henriques* for Defendants and Appellants :·

Whenever tales jurors are to be drawn in the parish of Orleans, the judge shall enter an order on the minutes, directing the criminal sheriff or one of his deputies to draw such number of tales jurors as in the opinion of the court may be necessary to complete the jury in the case on trial. Act No. 138, extra session of 1877, p. 209.

To enter an order on the minutes as provided for in Act 138, 1877, is meant, to set down in writing, to make a record of and not merely to announce, and is not synonymous with render. Am. and Eng. Ency. of Law, Vol. 6, verbo "Enter," p. 649; see McLaughlin vs. Doherty, 54 Calif 519; Lockwood et als. vs. Dills, Admr., 74 Ind. 51.

In the direct examination of a witness leading questions can not be asked—except when the witness appears hostile to the party producing him or is unwilling to give evidence. 1 Greenleaf on. Ev. (14th ed,), Vol. 1, Secs. 434, 435; 2 Taylor on Ev., Vol. 2, p. 1196, Sec. 1404; State vs. Tod Johnson, 29 An. 717; State vs. Parce, 37 An. 269.

Under the guise of *res gestæ* a narrative of past events made after the events are closed, by either the injured party or by bystanders, is not permitted. Wharton Crim. Ev., Sec. 264; State vs. Melton, 37 An. 78; State vs. Williams, 34 An. 961.

State vs. Walsh et als.

In the instant case, the evidence admitted (against the objection of the accused) was the declarations of third persons made after the transaction was at an end, outside the presence of the accused, at a distance of over a square from the place where the event, which resulted in death, had occurred, and after several hours had elapsed.

In cross-examining the witness of the State, the accused must be allowed to ask any fact tending to establish his defence, whether it be or be not connected with the facts testified to in the examination in chief.   State vs. Swayze, 30 An. 1323; State vs. Thomas, 32 An. 349; State vs. Wright, 40 An. 589.

When there is a question as to whether the attack was made by the deceased or the accused in the fatal encounter, it is competent to show by prior declarations of either party that the attack was the one he intended to make.   Wharton on Homicide, Secs. 694, 695; Stokes vs. People, 53 N. Y. 164; Wiggins vs. ·People, 93 U. S. (3 Otto) 465; State vs. Jefferson, 43 An. 996.

An accused can avail himself of the privilege of testifying, but can not be compelled to testify.   Constitution of 1879, Art. 6; Acts of 1886, No. 29, p. 39.

The State can not, under the guise of offering rebutting evidence, reinforce its testimony, proving matters not brought out by the defendants.   Bishop Crim. Pro., Vol. 1, Sec. 1069.

It is the duty of the court to instruct the jury upon every phase of the case made by the evidence.   When evidence is offered to prove a certain state of facts, and the claim is made that they are proved, the court should be requested so to do, charge the jury that the law is applicable to the facts claimed to be proved.   State vs. Tucker, 38 An. 540.   In all cases evidence of character is an item of proof to be considered by the jury; it is entitled to the serious and honest consideration of the jury.   It is from this evidence, as well as from all the other evidence before them, that the jury are expected to form their final conclusion.   State vs. Garic, 35 An. 970.

---

The opinion of the court was delivered by

BREAUX, J.   The defendants having been tried on the charge of murder, and convicted without capital punishment, were sentenced to suffer imprisonment at hard labor for life.

From the verdict and judgment they appealed.

Their grounds of complaint are set out in a challenge to the array of tales jurors, a motion for a new trial and fourteen bills of exceptions.

The motion for a new trial was tendered *ex industria*, for it reiterates the grounds reserved in the bills, and contains no other or different matter requiring the court's consideration.

The court having issued an order to the criminal sheriff to draw the names of 150 talesmen from the jury wheel containing the talesmen drawn by the jury commissioners, and directing their summons, their counsel challenged the array of the said tales jurors on the grounds that there was no legal order issued for the summoning of

the talesmen; that there was no order written on the minutes of the court in the manner required; that there was no legal drawing of talesmen; and that the said talesmen were drawn by the jury commissioners instead of the criminal sheriff, or one of his deputies.

The last ground, viz.: that there was no legal drawing, as the talesmen had been drawn from the jury wheel by the commissioners, and not by the criminal sheriff, has been amended and supplemented by the effect of the evidence admitted, and includes the additional objection that the deputy sheriff did not draw the names of the tales jurors from the jury wheel in the manner required by the statute on the subject.

The question is fairly presented by the admission of the assistant district attorney, that the entry on the minutes under date of September 27, 1892, directing the drawing by the criminal sheriff of tales jurors was written in the minute book by the minute clerk, under directions of the court, and not by the presiding judge with his own hand, but that after the minutes had been written containing the order, they were signed and approved by the trial judge before the list of jurors was called.

The deputy who drew the talesmen states that three jury commissioners and the witnesses, naming them, were present; that 250 names were placed in the wheel, from which he drew 150 names of tales jurors; that they were drawn in a bunch; "that he took the 150 names out at one and the same time."

### Entering Order upon the Minutes.

1. The objection made because the entry in the minute book of the order for the drawing of the talesmen was written by the clerk, and not by the trial judge with his own hand, is the first in the order of the questions presented.

Act No. 158 of 1877 provides: That whenever on the trial of any criminal case in the parish of Orleans, where the accused is charged with a felonious crime, the panel of jurors has been exhausted and the jury is not complete, or when in the opinion of the judge, in a case fixed for trial, talesmen will be required, the judge shall enter an order on the minutes, directing the criminal sheriff or one of his deputies to draw such number of tales jurors as, in the opinion of the court, may be necessary.

This, it is contended, can not be interpreted to mean that the judge shall announce what the order is, and that the minute clerk shall enter the order upon the minutes, but that it is the duty of the judge himself to enter the order on the minutes.

" To enter," with reference to the minutes of a court, is to cause to be put down upon the record any order or any part of the court's proceedings; it is the act of setting down, or causing to be set down, in writing; recording, or causing to be recorded, in due form, any step in the case of which note must be kept.

The minute clerk was the mere amanuensis of the judge.

It was in no respect his order.

The minutes are of the court's proceedings and are made authentic by the judge's signature.

It would be entirely exceptional to hold that the judge must write down certain orders in proper person.

By adopting the medium of "to enter" as understood, and as given in the dictionaries, it agrees at all points with the practice of the courts.

### PANEL OF TALES JURORS.

2. The second ground of challenge to the array, as presented in counsel's brief, and in his oral arguments at the bar, is that the deputy of the criminal sheriff, acting under the order of court, instead of drawing from the jury wheel, the names of talesmen one by one, took out a handful of slips, counted one hundred and fifty names and returned the remainder.   He argues that by this irregularity there was not the indiscriminate taking from the jury wheel and a resort to chance or fortuity that the statute provides; that the drawing was not as intended and the proceedings were null and void.

A violation of the special statute and the selecting of tales jurors would violate the panel of tales jurors.

Though the jury commissioners and witnesses were present, only the deputy sheriff who attended to the drawing was examined as a witness.

He is direct in his testimony; no slips were selected; they were taken out and the number exceeding the one hundred and fifty ordered to be drawn returned without reading the names.

The names were taken from the wheel at random.

There was no wrong committed to the prejudice of the accused or any irregularity detrimental to the defense.

It was not in good form to act as hastily in the drawing; we can not give it our approval, but this does not carry with it the nullity of the panel of the tales jurors.

If grounds were shown for the least inference that the defendant was denied that chance drawing of jurors for his trial which the statute provides we would annul and set aside the verdict.

If the slips had been taken out one by one, instead of many, the fortuitous would not have been more absolute.

With the exception of undue haste there was no informality; at any rate not sufficient to annul a panel of tales jurors.

The decisions and the authorities uniformly maintain that the irregularity must give rise, at least, to an inference that the names of tales jurors were selected and not drawn.

## THE QUESTION NOT LEADING.

The following question was objected to by defendant's counsel as leading:

"I understand you to say that when you got there, after running there, you found one man lying partly on the banquette and partly in the gutter, dead?"

The answer of the witness was "Yes, sir."

It is true that the interrogatory must not assume facts as proven which have not been proven; nor that particular answers have been given which have not been given.

The prosecuting officer, it is shown, had not misunderstood the witness who had already testified in reference to the fact suggested by the question.

When the purpose is to lead the mind of the witness to the subject of the inquiry, the examining counsel may recapitulate to the witness the acknowledged facts already established in order to bring him to the material points on which he is to speak.   1 Greenleaf on Ev., Sec. 434; Roscoe Crim. Ev., p. 730.

In thus leading the mind he may propound a question which suggests the answer "Yes" or "No," if it be not conclusive upon the matter at issue, and suggests incidental facts, not directly incriminating the accused.

## CIRCUMSTANCES UNDER WHICH THE COAT OF ACCUSED WAS FOUND.

To the following question the accused objected: "State exactly what occurred at the time of the finding of the coat?" on the ground that the fact sought to be proven was not part of the *res gestæ*, more than two hours had elapsed after the homicide and the accused was not present.

It is shown by the evidence that after the arrest of two of the accused, Walsh and Leonard, the officer repaired, about two hours after the homicide, to where the other accused, Ryan, lives, and there found a coat on which there were blood stains.

The accused was not present.

The officer spoke to his mother and sister.

The court states, in the recital of facts incorporated in the bill, that nothing was said at the time with reference to Ryan.

By the court, reasons for ruling:

"Later during the trial Ryan admitted the coat to have been his, and also that there were blood stains upon it. Nothing prejudicial to the accused was elicited in this examination with respect to any remarks made by Ryan's mother or sister. I admitted the testimony for the purpose of permitting the prosecution to prove the discovery of the coat, its condition and the circumstances surrounding the discovery.

"As a matter of fact this witness did not at any time claim that he heard any remarks made by any person at the time of the finding of the coat, nor did he undertake to repeat anything as having been said at the time."

The objection to the question lost all importance, if it ever had any, by the answer given.

With reference to that to which objection was made the witness did not testify. He knew nothing about it; had not heard.

Another bill of exceptions was taken, viz., No. 7, on the same subject matter, to the testimony of Officer Bitterwolf.

The question propounded was:

"Who were there at the time that this coat was found?"

"Ans. Mrs. Ryan and her daughter and Officer Fordyce and my-self."

And then the following question was asked of said witness:

" Q. Anything said at the time of the finding of said coat?"

And the witness answered and said:

" Yes, sir."

The trial judge states that the testimony was admitted for reasons stated in bills 4, 5 and 6, and adds:

" It was subsequently admitted that the coat was Ryan's."

The coat was admissible as evidence tending to prove the pres-ence of the accused, Ryan, at the time of the homicide, and that this garment was blood stained; it was competent to prove under what circumstances it was stained with blood.

The impulsive exclamations of those with whom the accused re-sided as to the identity of his coat at the time it was discovered, about two hours after the homicide, are not inadmissible declaration or narrative, but utterances which, if proven, will not vitiate the verdict; the defendant having afterward admitted that the coat was his.   A new trial will not be granted to have excluded the testimony of a fact proven by defendant's admission.

### THREATS NOT COMMUNICATED.

Counsel for the defendants, during the course of the cross-exami-nation of a State witness, J. Coyle, inquired of the witness whether or not before the homicide the deceased Hanley had not made certain threats against the accused.

The counsel for the defendants stated to the court that the object of the cross-examination of this witness was to prove that the deceased, Patrick Hanley, did, a short time prior to the fatal encounter, threaten the life of Michael Walsh, one of the defend-ants, and furthermore, that the first overt act at the time of the homicide was made by this witness, Coyle, striking Leonard, another defendant, and by the deceased drawing a pistol and pointing it at the accused, Walsh.

The court ruled that the testimony was not admissible, for the reason that no foundation had been laid for the introduction of evidence of threats by the deceased against the accused, and reserved to defendants the right later during the trial to re-examine

this witness if in the meantime the basis for the introduction should have been laid.

The counsel for the defendants urges error on the part of the court in having thus ruled, and contends that on cross-examination he must be allowed to cross-examine the witnesses for the State as to any fact to establish his defense, whether the fact be connected with or disconnected from those testified in the examination in chief.

In support of his contention counsel refers to the cases of State vs. Swayze, 30 An. 1327, and State vs. Grayson, 38 An. 788.

The distinction laid down, in both those cases, between the right of the State in the cross-examination of witnesses of the accused and the right of the accused in the cross-examination of a witness of the State is not disputed.

It is conceded by the prosecution that the accused had the legal right to cross-examine the witnesses for the prosecution, as to any fact tending to establish their defense, whether connected with the facts testified in the examination in chief or not.

The prosecution disclaims any denial of this well-established principle, and urges that the objection was that evidence of threats could in no sense be heard to establish a defense in the absence of proof of some overt act or hostile demonstration by the deceased at the time of the killing.

Such was also the reason assigned by the trial court for excluding the testimony sought to be elicited, and for suggesting postponement of the examination of the witness upon this point until proper foundation was laid.

Proof that the threats have been communicated to the accused, or of some overt act or hostile demonstration, is a condition precedent to the admissibility of testimony to prove that threats were made by the deceased.

Counsel for the defendant does not limit his argument to these propositions. He urges that the question submitted for adjudication is whether, under the state of facts as presented by the record, it was competent to show, when there is a question as to whether the attack was made by the accused or the deceased, the prior declarations of either party.

In other words, that in cases of doubt as to who commenced the attack, threats of the deceased against the accused though uncom-

municated, are relevant to show that the attitude of the deceased was hostile to the defendants.

The recital of facts by the judge in the bill must, under our jurisprudence, be accepted as correct.

He states in words not to be misunderstood that no foundation had been laid at the time that these questions were propounded to the witness.

Whether a' sufficient foundation had been laid for the reception of the evidence was a question for the judge.

We can not assume that there was a question as to whether the attack had been made by the accused or the deceased, regardless of the judge's statement that no foundation at all had been laid and that no attempt in that direction had been made.

## THE JUDGE'S RECITAL IN THE BILL OF EXCEPTONS.

Later in the trial a witness on behalf of the defendants was asked the question:

" If she had heard threats made by the deceased, Patrick Hanley, against the accused, Michael Walsh, five or ten minutes prior to the fatal encounter?"

Similar objection was made by the prosecuting officer as was made to the testimony of John Coyle.

The court sustained the objection, to which defendants reserved a bill of exceptions. The following is the recital of the court in the bill:

''In my opinion under the proof, evidence of threats was inadmissible. There can be no question as to who was the aggressor, the matter is not left in doubt; the conflict was provoked by the defendants, who were the first assailants, and who commenced the attack with dangerous weapons.

"There was neither provocation, necessity nor excuse for the murder, which was cruel in the extreme. The accused were in no danger, either actual or impending. Neither the deceased nor the persons who accompanied him had made any hostile demonstrations or committed any overt act toward the accused; on the contrary, the proof established, beyond all question, that the first attack was made with murderous weapons by the prisoners. Nine witnesses for the State supported this conclusion, which was confirmed em-

phatically and positively by certain physical facts and all surrounding circumstances. The testimony of the interested witnesses for the defence (the three accused, the mother and sister of one of them) was palpably incorrect and no weight whatever could be given to it."

The question of law presented by counsel does not arise in the case.

The question is one of fact as to whether a foundation for the reception of the testimony was laid, *vel non*.

We have the statement that the testimony left no doubt as to who made the attack.

The testimony is not before us. The facts necessary to a decision are those recited in the bill of exceptions.

They are conclusive, and leave no room to apply the principles laid down in the text books and in the decisions to which our attention is directed.

The threats were inadmissible, as they had not been communicated; no proof was made of an overt act or hostile demonstration by the deceased, and the question who was the aggressor is not left in doubt by the recitals of the trial judge as contained in the bill of exceptions.

### WITNESS IN HIS OWN BEHALF.

One of the defendants had testified.

The day after he had been discharged as a witness he was re-examined by the State.

The district attorney stated to the court that he desired to have the accused called for the purpose of laying a foundation for a contradiction.

The defendants' counsel, objected and assigned as reason that the accused had been a witness in his own behalf, also in behalf of the other defendants; that he had testified and had been cross-examined and his examination closed; that he could not be recalled to be re-examined.

The only objection was "that the assistant district attorney could not place upon the stand an accused person for any purpose, and particularly after said accused had testified and retired from the witness stand."

The statutes of the different States making defendants competent witnesses in their own case have undergone considerable construction by the courts.

It is generally stated that if an accused chooses to waive the constitutional protection in his favor and become his own witness, he may be recalled as any other witness in the case. He may be examined, and cross-examined, impeached and corroborated. The weight of the testimony is left to the jury.

He must answer relevant questions.

" Any other construction would render this statute the most effectual shield to crime and criminals which could possibly be devised." Wharton Crim. Ev., p. 432.

" The trial judge may, at his discretion, permit to be recalled in order to be re-examined by the party recalling him. As a matter of discretion, however, this is not reviewable by the appellate court unless it appear that the error goes to the merits of the case." Ib. 493. It is a matter wholly within the discretion of the lower court to allow a witness to be recalled to lay the foundation for his impeachment. 11 S. E. 758; 9 So. 574.

Act 29 of 1886 is a return to a practice which became odious in the remote past.

It is now divested of all adverse presumption because of the fact that the accused does not choose to testify in his own case.

He is still protected by the presumption of the common law, as to innocence until found guilty, should he not testify.

"It is proper for the court, in all cases where the defendant declines to avail himself of the right of testifying, to hold firmly to the position that no inference is to be drawn against him from such omission. * * *

" And it has been considered error for the judge to decline to charge the jury that no presumption is to be drawn from said withholding, and it has been held error if the court permit the counsel for the prosecution, against defendant's objections, in addressing the jury, to comment on the omission as a circumstance against him, or a fact to be considered in determining the case." Wharton on Crim. Ev., p. 435.

The fact that the prisoner is examined by counsel, and that the judge will be able to preserve his position as moderator, is a safeguard against the abuses of the old system.

In thus admitting the prisoner to examination as a volunteer witness under the statute, he waives his privileges as an accused in open court, during the examination of witnesses, at the trial in matters connected with the offense. He is subject to the same rules

and called upon to submit to the same test as other witnesses. In the language of the statute:

"He shall be subject to all the rules that apply to other witnesses."

His credit, like that of other witnesses, is for the jury.

### REFUSAL TO INSTRUCT AS REQUESTED.

The last bill of exceptions reserved during the course of the trial was taken to the court's refusal to instruct the jury as requested.

The court gave the following special instruction as requested:

"Evidence of the character and reputation that an accused has in the community where he lives, when offered, is always competent. It tends, in many important phases of a case, to create a doubt which, but for that evidence, would not have existed in favor of the party or parties charged with crime, and it may, on the other hand, remove a doubt already existing, which otherwise might weigh heavily against the accused.

But declined to give the following: -

"Evidence of character and reputation that the accused has in the community where he lives, when offered, is always competent. It tends, in many important phases of the case, to create a doubt which, but for that evidence, twould not have existed in favor of the party or parties charged with crime, and it may, on the other hand, remove a doubt already existing, which otherwise might lay heavily against the accused."

A party who complains that an instruction was refused must show that it was appropriate to the case. 3 Graham & Waterman on New Trials, p. 17.

The law is tenacious of character, and correct instructions to juries make character part and parcel of the whole evidence when offered and admitted.

In this case the consideration of character was not excluded; the jury was instructed that "it is always competent when offered."

As to the part withheld it may be said, if character be an issue of the case, that withholding a particular instruction has not the same effect as giving an improper one. By the latter the jury is deceived, but by the former they are left unembarrassed to try the case on its merits, according to their own opinion of right and justice. 3 Graham & Waterman on New Trials, p. 1717.

A new trial will not be granted unless the jury were misled. 2 Thompson on Trials, Sec. 2401; State vs. Gorie, 35 An. 974; State vs. Riculfi, 35 An. 771; State vs. Bret, 6 An. 658.

The jury passed upon the question of guilt.

The questions of law presented do not give grounds to reverse the verdict.

Verdict and the judgment appealed from affirmed.

## DISSENTING OPINION.

WATKINS, J.  I am in accord with the opinion of the majority, except upon one question, and that is the right of the district attorney " to have the accused called for the purpose of laying the basis for his contradiction," under any circumstances, and particularly under the circumstances stated in the opinion.

The defendant had accepted the grace of a special statute, and placed himself on the stand as a witness in his own favor.  He was examined, cross-examined and re-examined.

He was then discharged from the witness stand.  "The day after he had been discharged as a witness," in the language of the court, he was recalled by the State and examined, "for the purpose of laying a foundation for a contradiction."

In so doing the State *made the accused her own witness*, and his testimony his own evidence.  In my opinion, the statute authorizing accused persons to testify is not susceptible of the interpretation the court has given it.  It declares that while "the circumstance of the witness being a party accused shall in no wise disqualify him from testifying," yet that declaration is coupled with the proviso, "(1) that *no one shall be compelled to give evidence* against himself;" and "(2) that if the person accused avails himself of this privilege, he shall be subject to all the rules that apply to other witnesses, and may be cross-examined as to *all matters concerning* which he gives his testimony."   Sec. 2, Act 29 of 1886.

In this instance the accused has been coerced to violate both of the foregoing provisions of the act, (1) by compelling him to testify against himself *as a witness for the State*, against his solemn protest; (2) by compelling him to give *testimony for the State* otherwise than on cross-examination, and in relation to matters and things about which he was not interrogated in chief while on the stand as a witness in his own behalf.

If the decision be in conformity to the statute, it is plainly uncon-stitutional, being in direct conflict with Art. 6 of the Constitution.

This statute is an enabling law, and like other enabling statutes should be strictly construed.

If the construction placed upon the statute in question prevails, *any witness who has appeared and testified for an accused* becomes liable to be thus called by the State *as a witness for the accused* not-withstanding his discharge, and at any subsequent stage of the trial, and compelled to give evidence against himself.   My understanding of the law is different.   I am firmly of the opinion that the State *exhausted* her right of questioning the accused upon his cross-exami-nation, and that both the statute and Constitution forbade his being made a *witness* for the State, and coerced to give testimony against himself.

For these reasons I feel constrained to dissent from the opinion of the majority.