13119

BURKHALTER *ET AL.* v. TOWNSEND, ADMX.

(158 S. E., 221)

November, 1928.

Messrs. *J. K. Owens* and *A. C. DePass,* for appellants,

Messrs. *McColl & Stevenson* and *F. D. Townsend,* for respondent,

April 14, 1931.

The opinion of the Court was delivered by Mr. Justice Cothran.

It appears that on December 30, 1918, P. L. Breeden leased, in writing, to Harris R. Townsend, a tract of land in Marlboro County, containing 400 acres, for a term of five years, beginning January 1, 1919, and ending December 31, 1923, at $6,000.00 per annum, payable on or before October 1st of each year.

Breeden, the lessor, died on October 10, 1919, during the first year of the tenancy, leaving a will by which he devised

the premises which had been leased, to his two daughters, Mrs. Burkhalter and Mrs. Holladay, one-half interest to each for life.

It appears that the rent for the year 1919, the year in which Breeden died, was paid to him; Mrs. Holladay testified that for that year no part of the rent was paid to her, and we assume that the same may be said as to Mrs. Burkhalter.

It seems that Mrs. Burkhalter and Mrs. Holladay divided the 400-acre tract between them, after the death of Breeden, and that Townsend recognized them as the parties to whom the rent should be paid; for on December 30, 1919, he wrote to Mr. Holladay, husband of Mrs. Holladay: "As for the contract, I have a copy that Capt. Breeden left with me, and you may feel assured that I will carry out the contract equally as well for you as I did for Capt. Breeden, which apparently was very satisfactory to him."

For the two years following this assurance on the part of Townsend, that is, 1920 and 1921, he paid Mrs. Burkhalter and Mrs. Holladay the rent stipulated in the contract, $6,000.00 per annum.

In the fall of 1921, Townsend began to show a decided chafing under the yoke of the 1918 contract, and expressed in his letters during that time his intention to repudiate the contract, for the remaining part of the term, 1922 and 1923, unless an arrangement should be made between him and the ladies for a reduction of the rent or a surrender of the land to them, saying: "If you are not able to do this, I will not be able to keep the land."

His letter to this effect was answered by the attorneys who stated that no arrangement looking to a change of the terms of the lease would be considered.

This letter was answered by the attorneys of Townsend, on October 19, 1921, suggesting that the rent be reduced to $3,000.00 for the two interests and closing with this declara-

tion of war: "At all events, he asks us to give you express notice that if some new arrangement is not concluded by November 1st, 1921, that he will prepare to relinquish possession of the land January 1, 1922, and make other arrangements."

This was answered by the opposing attorneys as follows: "At the request of Mrs. Alma B. Burkhalter we are replying to your letter to her of the 19th inst. relative to the lease of her place to Mr. Harris Townsend. Mrs. Burkhalter instructs us to say that she expects Mr. Townsend to comply with his written contract of lease for the rental of her place during the coming year."

To this the attorneys for Townsend replied: "* * * Advise you that Mr. Harris Townsend states that he would expect your client to be ready to take charge of the land January 1st, 1922, that he will make other arrangements."

By the first of January, 1922, Townsend had moved from the place in compliance with his notice, and the life tenants took charge of it. It appears that they used due diligence in renting the premises for the years 1922 and 1923, but $3,-000.00 per annum for the entire place is all that they were able to get.

The transcript does not give the date of the commencement of the action; the briefs of both counsel state that it was commenced in 1923; at what time is not stated. The answer of Townsend appears to have been served upon December 7, 1922, and we assume that the action was commenced in November, 1922.

The complaint is based upon the contract of December 30, 1918, which is alleged to have been breached by Townsend by his abandonment of the premises in January, 1922, and his failure and refusal to pay the rent for 1922, due October 1st and the rent for 1923, due October 1st, with interest from those respective dates after allowing him credit for the rents collected by the plaintiffs, $3,000.00, for each of these

years. They claim of course as devisees under the will of their father, P. L. Breeden, as above explained.

The defendant, Harris Townsend, answered the complaint. We do not deem it necessary to recapitulate the defenses set up, as the answer is set forth in the former appeal in this case, 139 S. C., 324, 138 S. T., 34.

Harris Townsend, the defendant originally, died in May, 1928, and on July 10, 1928, an order was passed substituting his administratrix, the respondent, Mary Pauline Townsend, as defendant in his stead. She filed an "amended" answer adopting the answer which had been filed by Harris Townsend. We do not deem it necessary to set out that answer, for the reason that the appeal turns upon questions of law that are sufficiently made clear by a discussion of the motion and order of nonsuit hereinafter considered.

The case was tried by his Honor, Judge Mauldin, and a jury at November term, 1928.

There is no controversy as to the facts of the case as above set forth. At the conclusion of the testimony on behalf of the plaintiffs the defendants moved for a nonsuit upon the grounds:

"1st. That the plaintiffs are not the real parties at (in) interest, and therefore not entitled to bring this suit; in that the real parties at (in) interest were the executors of the estate of Capt. P. L. Breeden.

"2nd. That the cause of action stated in the complaint does not survive, in that the cause of action stated in the complaint was for damages *ex delicto,* and not for damages *ex contractu.* And further that the terms of the contract were personal between Breeden and Townsend."

The grounds of the motion are stated to be two in number; as a matter of fact they present more than two legal propositions:

1. That any right of action against Townsend, growing out of the alleged breach of the lease contract, vested in the

executors of the will of Breeden and not in the devisees of the leased property under his will.

2. That the alleged cause of action against Townsend growing out of his abandonment of the leased premises is an action *ex delicto,* not *ex contractu,* and did not survive the death of Townsend, in favor of either the executors or the devisees.

3. That the contract contained personal obligations of Townsend, and that damages on account of its breach are not recoverable either before or after his death.

In passing upon the motion for nonsuit, his Honor, Judge Mauldin, granted it upon the sole ground that the lease contract was an asset of the estate of Breeden; that any action predicated upon a breach of it should be brought in the name of his executors; and that the plaintiffs as devisees under his will could not maintain such an action. He accordingly granted an order sustaining the defendant's motion for a nonsuit and dismissing the complaint. From the judgment entered thereon, the plaintiffs have appealed.

The nonsuit having been ordered upon the sole ground above stated, and no additional grounds to sustain it having been filed by the respondent, the appeal is necessarily confined to a consideration of the ground upon which it was ordered. The propositions numbered 2 and 3 above are not properly before the Court, and should not therefore be considered.

We do not think that there could be a doubt, as to the correctness of the proposition, that, if Townsend had breached the contract during the lifetime of Breeden, a cause of action for damages on that account would have accrued immediately in favor of Breeden, and, if not prosecuted during his lifetime by him, could have been prosecuted after his death by his personal representative alone. The facts here, however, do not present such a case. The contract was made in December, 1918; the rent for 1919 was paid to Breeden; he died in October, 1919; there

was no breach of the contract in his lifetime and of consequence no right of action which could have devolved upon his executors. After his death Townsend, within a few months, in December, 1919, recognized the plaintiffs as his landlords and promised to carry out the contract with them as faithfully as he had done with Breeden, and as a matter of fact, without raising the slightest objection, paid them the rents accruing for the years 1920 and 1921, at the contract rate. The breach of the contract did not occur until January 1, 1922, after Townsend had been occupying the premises under the contract for the years 1920 and 1921, and paying the plaintiffs rent. They had been in possession of the premises since October, 1919, the date of Breeden's death, recognizing Townsend as their tenant. What possible interest the executors of Breeden had in the contract or in its breach, we are unable to perceive.

If there had been no lease outstanding at the time of the death of Breeden, to Townsend, the plaintiffs as devisees under Breeden's will would have been immediately entitled to the possession of the property, and, as incidental thereto, the right to rent it and collect the rents. But as there was such outstanding lease, the plaintiff's possession was necessarily incumbered thereby; they became bound to Townsend to recognize the lease. If they were bound to Townsend, there appears no reason why he should not be bound to them, as he distinctly acknowledged. If it had been to the interest of Townsend, as he evidently thought it was during the years 1920 and 1921 to hold to the contract, can there be a doubt that he would have been entitled to hold for the remainder of the term?

The rule is thoroughly settled in this State as is expressed in the case of *Huff v. Latimer*, 33 S. C., 255, 11 S. E., 758, 759: "There can be no doubt that, at common law, where the landlord dies intestate before the rent becomes due, the rent goes to the heir. * * * There is as little doubt that where the landlord dies testate the rent goes to the dev-

isee, and not to the executor." In that case Sullivan had rented a certain piece of land to the plaintiff Huff, for a stipulated rent. Sullivan devised the tract to one Nabors, and died before the rent fell due. Huff, the tenant of Sullivan, paid the rent to the devisee Nabors, when it accrued. The executors of Sullivan seized the crop of Huff for the rent agreed to be paid to Sullivan. Huff contended that Nabors was entitled to the rent as devisee, and that his payment of it to Nabors fully discharged his obligation. The Judge charged the jury that, if such were the facts, Huff was entitled to recover from the executors. The jury found for Huff, and the judgment was affirmed on appeal under the foregoing principle.

In *Kirkpatrick v. Atkinson,* 11 Rich. Eq., 27, the Court said: "The rents and profits, which accrue during the lifetime of the intestate, belong to his personal representative, and not to his heirs. After that period, the right to the rents and profits accompanies, of course, the inheritance."

In *Staton v. Guillebeaux,* 123 S. C., 363, 116 S. E., 443, 31 A. L. R., 1, the Court said, quoting syllabus: "Where a landlord dies intestate before the rent becomes due, the rent goes to the heir; and, where landlord dies testate, the rent goes to devisee."

We have purposely refrained from discussing the propositions numbered 2 and 3 above for the reason, as stated, that they are not properly before the Court.

The judgment of this Court is that the order of nonsuit be reversed, and the case remanded to the Circuit Court for trial.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES STABLER and CARTER concur.