MRS. MAUDE V. SHACKELFORD v. THE SOVEREIGN CAMP OF THE
WOODMEN OF THE WORLD.

(Filed 18 March, 1936.)

**1. Insurance K b—Evidence held for jury on question of insurer's waiver
of prompt payment of premiums.**

Plaintiff's evidence tended to show that for a period of fifteen years it
had been the custom of defendant mutual benefit association's collecting
agents, N. C. Code, 6393 (a), to collect dues from members after the due
date but within thirty days thereof, that defendant's home office knew
of this custom, or should have known of it in the exercise of due care,
and that insured made payment of the dues for the preceding month
within thirty days of the due date and died prior to the customary time
for the collection of dues for the following month. *Held:* The evidence
was sufficient to be submitted to the jury on the question of defendant's
waiver of the provisions of its certificate and by-laws, requiring certifi-
cate of good health before reinstating a policy upon payment of premium
after the due date, and upon the verdict of the jury in her favor, plaintiff,
who was named beneficiary in the certificate, is entitled to judgment for
the amount of the policy, less the dues for the month not paid because
of the death of insured prior to the customary time for collecting same.
The distinction is made between waiver by local agents of defendant,
prohibited by N. C. Code, 6503, and a custom of dealing established over
a period of years to the knowledge of the home office.

**2. Appeal and Error J e—**

Ordinarily, an exception to the admission of certain testimony will not
be considered on appeal when it appears that appellant elicited testimony
of the same import upon cross-examination of the witness.

**3. Insurance P b—**

An exception to the admission of the testimony of the former collecting
agent for defendant mutual benefit association, tending to establish a
custom of defendant in accepting dues within thirty days after due date,
*is held* untenable.

STACY, C. J., and CONNOR, J., dissent.

APPEAL by defendant from *Harris, J.,* and a jury, at December Term,
1935, of BEAUFORT. No error.

This is an action, brought by plaintiff against the defendant, to recover
$1,000 on a certain certificate of insurance issued to plaintiff's husband,
Rufus R. Shackelford, plaintiff being the beneficiary therein. The cer-
tificate No. TE-718755 being a 10-year term insurance certificate, issued
30 December, 1927. The plaintiff alleges: "That said policy of insur-
ance was in full force and effect at the time of his death. That said
policy obligated and bound the defendant to pay the beneficiary therein
named, to wit: This plaintiff, the sum of $1,000, upon proof of death of
the said insured, which obligation has been breached by failure and

refusal of the defendant to make payment as demanded. That more than 90 days has passed since receipt by the defendant of proof of death, and less than one year since said death has passed at the beginning of this action, and under the terms and conditions of said policy defendant is indebted to her as beneficiary therein named in the sum of $1,000, with interest from 90 days after the death of said insured. Wherefore, she prays judgment against the defendant for the sum of $1,000, with interest and costs, and for general relief."

In the record is the following: "It is admitted that plaintiff submitted to the defendant proof of the death of Rufus R. Shackelford, and that this proof was submitted more than 90 days prior to the institution of this action."

The answer of defendant denies the breach, and alleges that the certificate "was issued and accepted subject to the provisions of the constitution, laws, and by-laws of defendant. It is further expressly provided in said certificate that if the payments required by the constitution, laws, and by-laws of defendant are not paid by the member, the certificate should be null and void, and that should the certificate become null and void for any cause, acceptance of any payment from or for the member or any other act of any camp officer or member of the society thereafter should not operate as an estoppel or as a waiver of the terms of the contract. . . . That Rufus R. Shackelford failed to pay the installment due for the month of December within the time and in the manner prescribed in said constitution, laws, and by-laws, and that by reason of said failure the certificate became void as provided in said constitution, laws, and by-laws and particularly section 63 thereof. On or about 10 January, 1935, he paid the installment due during the month of December, 1934, which payment was made subject to and in accordance with the terms and provisions of section 65 of the constitution, laws, and by-laws of defendant. . . . The payment made by Rufus R. Shackelford on or about 10 January, 1935, by which he sought to be reinstated as provided by section 65 of the constitution, laws, and by-laws, was refunded by defendant's check B-25149, said check being in the sum of $2.89." The plaintiff refused to accept this check.

In reply the plaintiff alleges: "That the application referred to in the answer and the statements made in the same has been in possession of defendant at all times since the application was signed and no copy was kept by the insured and the adoption of the by-laws referred to in the answer as comprising a part of the said application was not known and understood and not read by the insured, and the by-laws referred to was never left with the insured and the insured had no knowledge of it, and in signing the application and making the said by-laws a part of it, the said insured followed the solicitation and direction of the agent of the

defendant, and that thereafter, through the entire period of the pendency of the contract, and as to each and all premium payments made, the agents of the defendant, knowing the provisions of the application from their custom of keeping them in their possession, and knowing that the said insured did not know and understand the provisions of forfeiture and of reinstatement and the condition of good health on the part of the insured at the time of his subsequent payment of that due date of such premium, consistently and in almost every instance caused and consented to the deferring of the payment beyond the due date and on to the following month as in the payment of the last premium, to wit: The one referred to in the answer, and the defendant, at its home office, knew of the long fixed and established custom of collecting the premium and never demanded nor required proof or notice of good health conditions on acceptance of such premium payments, but in every instance accepted the same as an approval of the date of their collection, and by the course of practice so long pursued caused the insured to recognize the payment as being the fixed policy of the defendant as to the time of payment by him and such custom and practice and withholding of actual knowledge was calculated to deceive and did deceive the said insured and mislead him to his prejudice, and the by-laws, providing that a delayed payment would not continue the policy in effect unless accompanied by a certificate of good health and an actual condition of good health, being at all times withheld from the insured and never brought to his attention, was a trick and device calculated and intended to deceive and did deceive the said insured, a fraud upon his rights and is null and void, and the custom and policy hereinabove stated constitutes a waiver on the part of the defendant of any right to plead the said deferred payment unaccompanied by proof of good health as a forfeiture of the contract of insurance. It is denied that the insured was in fact not in good health at the time of the payment of the premium referred to in the answer, and the state and condition of his health was known to the defendant at the time the insured made the payment."

The issues submitted to the jury and their answers thereto were as follows:

"1. Did the defendant company issue to Rufus R. Shackelford, with the plaintiff as beneficiary therein, the policy as set out in the pleadings? Ans.: 'Yes.'

"2. Did the defendant waive the matters and things set up in its pleadings and in the said policy as a defense in this action? Ans.: 'Yes.'

"3. Was the said policy in force at the death of the insured? Ans.: 'Yes.' "

The judgment is as follows: "This cause coming on for trial at this term before the judge and the jury, and the jury having answered the

issues as appears in the record, it is, on motion of J. A. Mayo and Ward & Grimes, counsel for plaintiff: Ordered, adjudged, and decreed that the plaintiff recover of defendant $1,000, the face of the policy, less $3.14, representing the dues for January, 1935, on the policy, together with the cost, to be taxed by the clerk. Bond to stay execution fixed at $1,200. W. C. Harris, Judge presiding."

To the foregoing judgment defendant excepted, assigned error, and made numerous other exceptions and assignments of error and appealed to the Supreme Court. The material ones and necessary facts will be set forth in the opinion.

*John A. Mayo and H. S. Ward for plaintiff.*
*MacLean & Rodman for defendant.*

CLARKSON, J. The main question involved in this controversy is whether or not the provisions in the policy were waived by defendant. We think the uncontradicted evidence shows a waiver.

"In *Murphy v. Ins. Co.,* 167 N. C., at p. 336, it is written: 'It is also held by well considered cases on the subject here and elsewhere that this provision as to forfeiture, being inserted for the benefit of the company, may be waived by it, and such a waiver will be considered established and a forfeiture prevented whenever it is shown, as indicated, that there has been a valid agreement to postpone payment, or that the company has so far recognized an agreement to that effect or otherwise acted in reference to the matter as to induce the policyholder, in the exercise of reasonable business prudence, to believe that prompt payment is not expected and that the forfeiture on that account will not be insisted on (citing numerous authorities).' The principle in the above case is cited and approved in *Paul v. Ins. Co.,* 183 N. C., 159, and at p. 162 it is said: 'A course of action on the part of the insurance company which leads the party insured honestly to believe that by conforming thereto a forfeiture of his policy will not be incurred, followed by due conformity, on his part, will estop the company from insisting upon the forfeiture, though it might be claimed under the express letter of the contract' (citing numerous authorities)." *Hill v. Ins. Co.,* 200 N. C., 115, at pp. 121-2. The above has been for long years the well settled law in this jurisdiction.

W. H. Congleton, a witness for plaintiff, testified, in part: "The Woodmen of the World had a local camp in Washington, N. C., in 1928, and continued to have one through 1935. The Woodmen of the World is a fraternal organization. The local camp has a consul commander, vice-consul, sentry, and vice-sentry. I was consul commander in 1928. For the past three years I have been financial secretary. My duties as financial secretary were to collect dues and remit to the home

office. I collected the dues from Mr. Rufus R. Shackelford. I have been collecting for the past three years. Mr. Singleton was clerk or financial secretary before I held the office. This is the fourth year that I have been secretary. Q. Tell us whether there was any custom during that time of collecting dues which, under the contract, were due at a certain time thereafter and within the grace of 30 days? Ans.: Yes, sir, there was. It was customary. Mr. Singleton had the book, the former clerk ahead of me, and like he died 1 February, we would only be starting to collect the January dues. Q. How long had that been the custom of the lodge? Ans.: Over 15 years. Q. When you collected from him, when would you remit? Ans.: About the 12th of the month. Court: The dues for December you would remit 12 January? Ans.: Yes, sir, so as to reach the home office by the 15th. I would send them in by money order. The monthly report which I sent would show the months for which payment was made. I send these monthly reports every month. I have copies of the reports which I made. The home office sends me a statement of the dues which I am to remit. I get this somewhere around the 10th of the month. Q. Would you get it before you sent in your 10 January collection? Ans.: No, sir, 10 January goes in and then they bill me back the next month. Q. I mean on the December dues. When do they bill you for that collection? Ans.: January 1st to 5th. Q. Can you say, either from the fact of the report or your independent recollection, that this had been going on for any considerable period of time—if so, how long? Ans.: Been going on for over 15 years. When I collected from Mr. Shackelford I would give him a receipt for his dues. You hand me what purports to be two receipts. I signed both of them. Receipt No. 12 is for the December dues paid on 10 January. The other receipt is for installment No. 11. That is for the November dues. All of my receipts were in the same form. (The receipts exhibited to the witness show the date, the amount received, the month for which paid, and the amount paid. Receipt No. 12 was dated 10 January for December dues.) Q. Was any other information given to him than the receipt itself? Ans.: No. (Plaintiff offered in evidence the two receipts which had been exhibited to the witness, one dated 17 December, 1934, being receipt for $3.14 for November dues, the other dated 10 January, 1935, $3.14 for December dues.) I recall making the collection on 10 January. Payment was made to me by Mr. Shackelford in his store. Q. What appeared to be the condition of his health from your observation of him at that time he made the payment? Ans.: Good so far as I know. . . . Ans.: I can clear that up why he didn't pay. Court: This witness says he can clear up something. If there is any explanation you wish to make, do so. Ans.: In regard to the January installment, it had been the custom to collect back month—when I billed for the January collection I would not start

collecting until 1 February for the month of January, and he died 1 February and I could not collect a dead man's dues when I was sending in a death claim; that's the reason the January dues were not collected, because I mailed the death claim ahead of the report."

The record states: "The reports or remittance sheets to which the witness referred as being received between the 1st and 5th of the month, and which he used with his remittances to the home office, were in form as follows (setting same forth)."

The questions above were excepted to by defendant and assignments of error duly made. We do not think they can be sustained.

On cross-examination, the witness Congleton testified: "I have in my hands a book of bound sheets. They are sheets sent to me monthly by the Grand Lodge showing the names of the members, their certificates, and the amounts to collect on the certificates. You call my attention to the sheet showing the dues payable in December; that was received by me some time between the 1st and 5th of January. In regard to January installments, it had been the custom to collect back month. (Redirect) : Q. Would the report show that it was for the then past month? Ans.: Yes, sir, that was an understood fact. Q. How was it understood? Ans.: Because it had been the custom and they had never changed it whatsoever." The evidence elicited on cross-examination is practically that objected to on the direct examination. The witness was the financial secretary of the local camp. The receipt given Rufus R. Shackelford for December was signed by Congleton, the local financial secretary, on 10 January, 1934. Shackelford was then in good health. The defendant for the December collection sent a bill to Congleton, the local financial secretary, between January 1st to 5th. The dues for December would be remitted 12 January, so as to reach the home office by the 15th. Rufus R. Shackelford died 1 February, 1934, having been given a receipt prior to his death by the financial secretary, Congleton, of the local camp, which course of dealing had been customary for more than 15 years.

A. L. Singleton, witness for plaintiff, testified, in part: "I held the position of financial secretary for the local camp of the Woodmen of the World before Mr. Congleton. I am familiar with the custom of collecting the monthly assessments when I was financial secretary. Q. Tell the court and jury when the assessments were collected with respect to when they were due. Ans.: Always waited until the month had 30 days grace and started collecting dues anywhere from the 1st to the 15th of the following month. I made out reports to the home office somewhat similar to the reports which Mr. Congleton has referred to. I would send my remittance to the home office anywhere from the 5th to the 15th." The question above was objected to and assignment of error made, which we do not think can be sustained.

From the entire evidence, the course of dealing extending over 15 years, it is beyond question that the home office knew, or in the use of due care ought to have known, of the custom. It acquiesced in the custom, and sent out forms indicating its knowledge of the custom, the home office sending bills for December dues from the 1st to the 5th of January. This is knowledge of the home office and fifteen years unbroken custom was sufficient to establish a "course of dealing" and an unmistakable information to Shackelford that when he paid his dues as the local camp required, his policy continued in force.

We do not think that the deposition of the sole witness for defendant, who resided in Omaha, Neb., and secretary of defendant company, raises any sufficient controverting evidence. He mainly states the constitution, laws, and by-laws of defendant. In fact, he says, speaking of defendant: "Its objects are to combine white persons of sound bodily health, exemplary habits, and good moral character, between the ages of 16 and 60 years, into a secret, fraternal beneficiary and benevolent association; provide funds for their relief; comfort the sick and cheer the unfortunate by attentive ministrations in times of sorrow and distress; promote fraternal love and unity; and to create funds from which, on reasonable and satisfactory proof of death of a beneficiary member who has complied with all the requirements of the association, there shall be paid the sum provided for by the terms of the contract to the beneficiary or beneficiaries under his beneficiary certificate."

Under the facts and circumstances of this case, the above fundamental ideals should be applicable to the plaintiff widow in this case. It is a matter of common knowledge that defendant is a splendid, reputable organization. The local financial secretary and former secretary were witnesses for plaintiff, indicating that under a course of dealing, for over 15 years acquiesced in by the home office and relied on by Rufus R. Shackelford, who had his receipt for the December dues, that on a technicality $1,000 should not be forfeited to the company.

The defendant cites N. C. Code, 1935 (Michie), sec. 6503, as follows: "The constitution and laws of a society may provide that no subordinate body, nor any of its subordinate officers or members, shall have the power or authority to waive any of the provisions of the laws and constitution of the society, and the same shall be binding on the society and each and every member thereof, and on all beneficiaries of members."

A similar provision is in the South Carolina law. The defendant cites the case of *Perry v. Sovereign Camp, W. O. W.* (S. C.), 174 S. E. Rep., 397. The decision was written by the able and learned *Associate Justice M. L. Bonham,* but is clearly distinguishable from the present case. In that case the member was suspended for nonpayment of installments, and the payment was made after the member was dead. In fact, the learned Justice lays down the rule relied upon by plaintiff (p. 399):

"Concede, if you please, that the Sovereign Camp had power to waive this nonwaiver provision of the statute and the nonwaiver provisions of its by-laws and constitution, unless it can be shown by competent evidence that it had knowledge of the facts upon which the claim of waiver, and consequent estoppel, is founded, no waiver or estoppel follows."

The above section was enacted by the General Assembly of North Carolina in 1913—ch. 89, sec. 17, N. C. Code, *supra,* sec. 6493 (a) (was enacted in 1921, ch. 139), and is as follows: "Assessments and dues referred to in the two preceding sections may be collected, receipted, and remitted by a member or officer of any local or subordinate lodge of any fraternal order or society when so appointed or designated by any grand, district, or subordinate lodge or officer, deputy, or representative of the same, there being no regular licensed agent or deputy of said grand lodge charged with said duties; but any person so collecting said dues or assessments shall be the agent or representative of such fraternal order or society, or any department thereof, and shall bind them by their acts in collecting and remitting said amount so collected. Under no circumstances, regardless of any agreement, by-laws, contract, or notice shall said officer or collector be the agent or representative of the individual member from whom any such collection is made; nor shall said member be responsible for the failure of such officer or collector to safely keep, handle, or remit said dues or assessments so collected, in accordance with the rules, regulations, or by-laws of said society; nor shall said member, regardless of any rules, regulations, or by-laws to the contrary, forfeit any rights under his certificate of membership in said fraternal benefit society by reason of any default or misconduct of any said officer or member so acting."

On the entire record, we see no prejudicial or reversible error.

No error.

STACY, C. J., and CONNOR, J., dissent.