14908

POLATTY *ET AL.* v. WOODMEN OF THE WORLD LIFE INS. SOCIETY

(3 S. E. (2d), 681)

October, 1938.

*Messrs. Mays & Featherstone,* for appellant,

*Messrs. Hugh Beasley, W. H. Nicholson* and *W. R. Dunn,* for respondents,

July 5, 1939.

The opinion of the Court was delivered by MR. ACTING ASSOCIATE JUSTICE WM. H. GRIMBALL.

This is a suit on a contract of insurance issued by appellant on the life of one Louis D. Polatty, the father and husband, respectively, of the respondents herein. The insured came to his death as the result of an automobile wreck on June 29, 1937. A verdict was rendered by a jury in the Court of Common Pleas for Greenwood County in favor of respondents, and this is an appeal from judgment entered upon this verdict.

It will not be necessary to consider all of the issues raised by this appeal, for in our opinion the cause may be disposed of by a consideration of the following three:

1. Whether the certificate of insurance was void from its inception because insured in his application for the insurance made false warranties to the effect that he had never been rejected for insurance, whereas he had, in fact, been rejected for insurance by eight different companies.

2. Whether the said false warranties relative to the insured's rejection for insurance by other companies was waived by one Ben Franklin, who is alleged to have been the agent of the defendant.

3. Whether Ben Franklin had authority under the provisions of the Code relative to fraternal benefit associations and the provisions of the constitution, laws and by-laws of the society to waive these warranties.

The contract of insurance was issued on January 11, 1937, and the insured was killed on the 29th day of June following.

The insurance contract was issued on application made by the insured which, among other things, contained the following agreements and warranties:

"I hereby certify, agree and warrant that I am of sound bodily health and mind; that I am temperate in habits and have no injury or disease that will tend to shorten my life. I hereby consent and agree that this application, consisting of 2 pages, to each of which I have attached my signature, and all the provisions of the constitution, laws and by-laws of the association now in force or that may hereafter be adopted, shall constitute the basis for and form a part of any beneficiary certificate that may be issued to me by the Sovereign Camp of the Woodmen of the World, whether printed or referred to therein or not.

"I hereby certify, agree and warrant that all the statements, representations and answers in this application, consisting of 2 pages as aforesaid, are full, complete and true, whether written by my own hand or not, shall be warranties, and I agree that any untrue statements or answers made by me in this application, or to the examining physician, or any concealment of facts in this application or to the examining physician, intentional or otherwise, or my being suspended or expelled from or voluntarily severing my connection with the association or any failure on my part to comply with the laws of the association, now in force and hereafter adopted, shall make my beneficiary certificate void, and all rights of any person or persons thereunder shall be forfeited."

In his application the insured stated that he had never been rejected for life insurance by any society, association or company, and that he had never failed to receive a contract for life insurance for the full amount and kind applied for.

As a matter of fact the insured had been rejected by eight different insurance companies to which he had applied for life insurance. These rejections were over a period of time from 1930 to 1936. He was four times rejected in 1930, once in 1932, and once in 1934, once in 1935 and once in 1936.

This false statement was material to the risk. It constituted an express breach of the contract. Unless waived by the insurer it would bar any recovery by respondents upon the contract. *Kizer v. Woodmen of the World*, 177 S. C., 70, 180 S. E., 804; *Nix v. Sovereign Camp W. O. W.*, 180 S. C., 153, 185 S. E., 175.

Respondents undertook to establish waiver, which, of course, is an affirmative plea. On this issue the burden of proof rested upon respondents. On this issue they must produce the greater weight of the evidence.

In order to prove waiver, respondents rely upon the alleged knowledge of the false statement by one Ben Franklin, who it appears from the record had held an office in the organization of the order of the Woodmen of the World which was called "Head Consul," and who had been on one or more occasions a delegate or representative from South Carolina to what is called the "Sovereign Camp" of the order.

The statute law of the State provides:

"§ 8047. Subordinate Bodies to Have No Power to Waive Provisions of Laws of Association.—No subordinate body or any of its officers or members shall have the power or authority to waive any of the provisions of the laws and constitution of the association, and the same shall be binding upon the association, and each and every member thereof and their beneficiaries.

"§ 8070. General Insurance Laws.—Fraternal benefit associations as defined in this article, shall be governed by the provisions hereof, and the general insurance laws of this State in force or hereafter enacted shall not apply to such associations unless provision therefor has been made or shall be made."

In order, therefor, to make out the plea of waiver, respondents must show by the greater weight of the evidence, the following four things:

1. That at the time of the execution of the application for insurance, Ben Franklin was an agent of the "parent" organization of insurer.

2. That he was instrumental in the execution of the application.

3. That at that time he knew of the falsity of the statement.

4. That the matter was within the scope of his agency.

In our opinion there was sufficient evidence in the record to warrant the submission to the jury of the first three of these elements of waiver. However, as to the fourth element, the record appears to be fatally insufficient.

It is a principle of the general law that the knowledge of an officer or agent of an insurer, which is acquired *within the scope of his duties* of employment or agency as to facts material to the insurance, is imputed to the insurer, in the absence of collusion between the insured and the agent.

"The testimony in this case," said this Court in the case of *Plunkett v. Piedmont Mut. Insurance Co.,* 80 S. C., 407, 61 S. E., 893, 895, "shows that Mr. Moore was not simply a soliciting agent, so called, but that he was held out by the defendant as competent to receive the premiums and transmit the policy, when issued, to the plaintiff with the indorsement in writing thereon; that the same was witnessed and approved by Oliver Moore as agent of the defendant company in those very words." The Court was discussing the doctrine of waiver.

And in discussing the same doctrine this Court said in the case of *Hankinson v. Piedmont Mut. Insurance Co.,* 80 S. C., 392, 61 S. E., 905, 907:

"* * * when this policy was issued by it to the plaintiff, G. C. Carpenter was held out as their agent in writing, with no restriction upon his powers as such. He did not simply solicit insurance, he received money for them. He countersigned with approval policies issued by them in his

own handwriting and as agent, and as such agent accepted with approval process of the courts.

"His knowledge was knowledge of his company, therefore, when he, under all these circumstances, assured the plaintiff that the iron safe clause was not necessary."

There are cases too numerous to mention holding that to constitute waiver, the matter must have been within the scope of the agency of the agent.

And the burden of proof in the present case rested upon respondents to prove this by the greater weight of the evidence.

The record shows that Franklin and the insured both lived in Greenwood and for five years had worked together in the same store. Franklin was a "Head Consul" of the State camp of the order of Woodmen of the World, and as such was a delegate to the "Sovereign Camp." The local camps elect delegates to the "Head Camps," the State organizations, and the Head Camps elect delegates to the Sovereign Camp.

The "Sovereign Camp Meeting," which is the legislative body of the order, is composed of its elective officers, Head Consuls, Junior Past Head Consuls of Head Camps, and representatives from head camps. This Sovereign Camp makes the rules and regulations, laws and by-laws of the order, and amends the constitution. Franklin had several times been head consul, representative, and delegate to this Sovereign Camp.

But nowhere in the record is there any proof whatever that the matter of the insurance contracts of the order was in the slightest manner within the scope of Franklin's duties. It nowhere appears that he had any authority whatsoever, in any manner, shape or form, in connection with the insurance department, with the acceptance of applications for insurance, with the issuance of insurance contracts, or in the continuance of them in force.

It is true that Mrs. Polatty testified that Franklin "took" this application. How did he come to "take" it? In what capacity was he acting? What authority, if any, did he have? To whom did he deliver it? What did he do with it? From where did he "take" it, and to whom did he "take" it? The record sheds no light on any of these questions. And the burden of proof was upon respondents to show by the greater weight of the evidence that Franklin was acting *within the scope of his authority.*

Mrs. Polatty further testified that she did not know that her husband had the insurance until after he had taken it out.

We have not before us the benefit of any testimony by Franklin. Respondents did not offer him as a witness. And appellant, after the case had been closed, asked permission of the trial Judge to place Franklin on the witness stand. This permission, however, was denied.

For the reasons above stated it is our opinion that the motion for a directed verdict, which the record shows was made by appellant, should have been granted.

It is therefore ordered that the judgment herein be, and the same is hereby, set aside. This cause is to be remanded to the Court below, where judgment will be entered in favor of appellant.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM, BAKER and FISHBURNE concur.

MR. JUSTICE CARTER did not participate on account of illness.