13838

PERRY v. SOVEREIGN CAMP, W. O. W.

(174 S. E., 397)

Before SEASE, J., Greenwood, November, 1932. 

*Messrs. Mays & Featherstone,* for appellant, 

*Messrs. Grier, Park, McDonald & Todd,* for respondent,

May 1, 1934.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

This appeal depends upon the determination of the unusual question: May one who is suspended for the nonpayment of dues and assessments in the insurance department of a fraternal order be reinstated by the payment of his dues and assessments after his death?

At first blush it would seem that a negative answer to the question is inevitable. But there are certain circumstances and occurrences which appear in the history of the case which make it necessary to consider the matter with care before the answer is given.

John T. Perry became a member of Rosewood Camp of the Woodmen of the World December 18, 1917, and received a certificate of membership, by which he was insured in the sum of $1,000.00, with his wife, the plaintiff in this action, as beneficiary. For six years Perry paid his dues and

assessments and remained in good standing in the order. Finding himself unable to make his payments, he was on the point of dropping his membership and insurance when Mr. Jesse C. Johnson, the brother of Mrs. Perry, and who resided at Canton, Ga., volunteered to pay the dues and assessments. The camp with which John T. Perry was affiliated is situated at Greenwood, S. C. It suited Mr. Johnson to pay the installments quarterly, and that plan was adopted by him and Mr. Ellis, the financial secretary of Rosewood Camp. The orderly method by which Mr. Johnson should have proceeded was to pay the dues at the beginning of each quarter, or at least before the expiration of the first month of each quarter, otherwise Perry would stand suspended for the nonpayment of the dues for that month by the operation of the by-laws of the order. If the dues for that first month were paid within three months, he was automatically reinstated. It seems that Mr. Johnson rarely sent his check for the quarterly dues before the middle or latter part of the quarter, in consequence of which habit Mr. Perry was constantly marked on the books of his camp suspended for the first month of the quarter and reinstated before the expiration of three months. The financial secretary of Rosewood Camp had adopted the plan of sending to those who were tardy in making their payments a card notifying them of their delinquency. This notice was not authorized by any rule or by-law of the order. Mr. Ellis, financial secretary of Rosewood Camp, testified that the sending of this notice "was his own idea." The Sovereign Camp did not require him to send them. These cards contained the following statement: "The sending of this reminder shall not be held to waive forfeiture or lapse of membership by non-payment of previous assessment of dues." The financial secretary of the local camp on the 5th day of each month forwarded to the sovereign camp at Omaha, Neb., his report of the collection of dues for the previous month, upon which report appeared the names of those who stood suspended and those who were reinstated.

Mr. Johnson died in April, 1932. There were then due by Mr. Perry the dues for April, May, and June, 1932. These were paid by the representative of Mr. Johnson's estate about the middle of that quarter, or about June 8, 1932.

Mr. Perry died August 9, 1932. His dues for July, 1932, had not been paid. On the report sent in by the financial secretary of Rosewood Camp on August 5, Perry was marked suspended for the nonpayment of July installment. This report was received in the home office at Omaha, Neb., August 13. On the day of, or the day after, the death of Mr. Perry, the family, through Mr. Major, sent to the financial secretary of Rosewood Camp the amount of Mr. Perry's dues for July.

On the trial of the case, the financial secretary, who was a witness for the plaintiff, was asked: "Why did you receive payment of a member who was already dead? I didn't want to take the responsibility of rejecting the claim. I told the one who paid me that he was suspended, I would take the money and send it to the Sovereign Camp and see what I could do about it."

August 10, 1932, the financial secretary of the local camp sent this letter to the Sovereign Camp: "I am enclosing a special remittance of $1.60 to pay Sov. J. T. Perry's dues for July. Sov. Perry died here yesterday. Kindly send me proof of death papers."

It will be noted that the financial secretary did not inform the Sovereign Camp that Sov. Perry's dues had been paid after his death on August 9.

Finally, when the Sovereign Camp denied liability and tendered to plaintiff the sum of $1.60, the amount of Perry's dues to it, this action was brought. The case was tried by Judge Thos. S. Sease with a jury and resulted in a verdict for plaintiff.

Motions for nonsuit and directed verdict were duly made by defendant and denied by the Court. This appeal followed, predicated upon numerous exceptions which make a few

cardinal questions the disposition of which will involve the determination of all the issues.

It must be conceded that, unless the defendant has ■■ waived the application of its rules, by-laws, and regulations applicable to the payment of dues and suspensions, and has estopped itself to rely on these rules, by-laws, and regulations of the order and the statute law of the State, then the plaintiff was not entitled to recover in this action.

The deceased, John T. Perry, on becoming a member of the order, agreed that, if he failed to comply with the by-laws of the order, his benefit certificate should be forfeited. He further agreed that he would pay the assessments as they were called for under the by-laws. He further agreed that, if he should fail to make any such payments on or before the 1st of the month following, "he shall stand suspended, and during such suspension his beneficiary certificate shall be void."

It is beyond doubt that Perry did not pay his dues for July, 1932, and that he died August 9, 1932. Unquestionably, then, by the by-laws of the order to which he had subscribed, and by which he was bound, he was suspended. Was he restored to membership and reinstated in the position of an insured person on his certificate of insurance, by reason of the fact that after his death his family paid the July assessment for which he was in arrears, and which arrearage automatically suspended him?

Let it be borne in mind in considering this question that Section 8047, Code of Laws S. C., 1932, relating to fraternal benefit associations, provides that: "No subordinate body or any of its officers or members shall have the power or authority to waive any of the provisions of the laws and constitution of the association, and the same shall be binding upon the association, and each and every member thereof and their beneficiaries."

Concede, if you please, that the Sovereign Camp had power to waive this nonwaiver provision of the statute and

the nonwaiver provisions of its by-laws and constitution, unless it can be shown by competent evidence that it had knowledge of the facts upon which the claim of waiver, and consequent estoppel, is founded, no waiver or estoppel follows.

This case is in such apt accord with that of *Sternheimer v. Order of United Commercial Travelers,* 107 S. C., 291, 93 S. E., 8, 11, its determination may safely be rested on the opinion of that case. Mr. Justice Hydrick, in the prevailing opinion, said:

"The burden of proving waiver was on plaintiff. *Copeland v. Assurance Co.* [43 S. C., 26, 20 S. E., 754], *supra.* The facts relied upon as evidence of waiver have already been stated, to wit, the custom of the local council and its officers of allowing members to pass the period of suspension for nonpayment of dues and assessments without suspending them and notifying the Supreme Secretary thereof. There are two reasons why this cannot be held to show waiver:

"(1) The constitution and by-laws of the order expressly provide that it shall not constitute waiver. That was a part of the contract, agreed to by the insured and binding upon him and his beneficiary. Section 2755, Civ. Code 1912, provides, with respect to a fraternal benefit association, that:

" 'No subordinate body or any of its officers or members shall have the power or authority to waive any of the provisions of the laws and constitution of the association, and the same shall be binding upon the association, and each and every member thereof and their beneficiaries.'

"(2) There was no evidence tending to show that the Supreme Council, or any of its officers, had notice of the custom."

So, in the present case, there is no competent evidence that the Sovereign Camp had any notice of the custom by which Johnson was permitted to pay Perry's dues at any time during the quarter, by which arrangement Perry was

automatically suspended for the first month of the quarter and automatically reinstated when the dues for that month were paid at a later period in the quarter.

When the defendant offered in evidence certain letters which passed between the financial secretary of the local camp and officers of the Sovereign Camp relating to the claim of Mrs. Perry under this certificate of insurance, they were excluded. This was error. Plaintiff had injected the issue of waiver and consequent estoppel. The deceased was a member of the local·camp through which the claim of his beneficiary had been transmitted to the Sovereign Camp, and through whom all the transactions of the deceased in relation to the insurance in the order had been conducted. There was no other avenue through which the actions of the Sovereign Camp could be presented to the Court. Manifestly, it was entitled to be heard thereabout.

It is urged that the Sovereign Camp had knowledge of the customary method by which Perry's dues were paid because the monthly report of the secretary of the local camp showed him suspended for the first month of nearly every quarter. The sufficient answer to that is that the next, or second, monthly report showed him reinstated because the dues of the first month had been paid within the period provided by the laws.

It is further urged that the Sovereign Camp is estopped to deny this claim because it received and retained the dues paid after the death of Perry, by his family, in the effort to reinstate him after his suspension for the nonpayment of his dues for July, 1932.

It is uncontradicted that, when these dues were tendered to Mr. Ellis, the financial secretary of the Rosewood Camp, after Mr. Perry's death, he told the one who paid him that he (Mr. Perry), was suspended, that he would take the money and send it to the Sovereign Camp and see what he could do about it. The money was paid him by Mr. Blyth Major, who was not called to contradict this evidence. Mr.

Ellis was asked: "In taking that money were you trying to make that amount to a re-instatement, or were you trying to pass the responsibility back to the Sovereign Camp?" He answered: "I was trying to cooperate with the beneficiary—without taking the responsibility myself."

A commendable exhibition of fraternal spirit, but his action cannot bind the Sovereign Camp unless it be brought to the attention of the Sovereign Camp and acquiesced in by it.

August 10, 1932, Mr. Ellis wrote Mr. John T. Yates, Sovereign Secretary, at Omaha, Neb., as follows: "I am enclosing a special remittance of $1.60 to pay Sov. J. T. Perry dues for July. Sov. Perry died here yesterday. Kindly send me proof of death papers."

It will be noticed that Mr. Ellis does not inform the Sovereign Secretary that Mr. Perry was suspended for nonpayment of July dues; he does not inform him that the dues were paid by Mr. Perry's family after his death. It is in evidence that the report of the local secretary for the month of July, which showed Mr. Perry suspended, did not reach the home office at Omaha till August 13. That went to one department of the home office; the letter of August 10 went to the claim department. It is common knowledge that the Order of the Woodmen of the World is a very large association with very many thousands of members; necessarily the investigation of a death claim must go through several channels and take considerable time.

What occurred in connection with the Perry claim? In response to the request of Mr. Ellis, the blank forms for proofs of death were sent. These were not completed and forwarded from Greenwood, S. C., until September 12, 1932. They were received in Omaha at the home office September 15. On the very next day, September 16, the claim department at Omaha wrote Mr. Ellis, financial secretary of Rosewood Camp, as follows:

"In re John T. Perry, Deceased

"We are in receipt of the proofs of death of the above named decedent and note the statement of Camp Officers

shows that the July installment No. 7 of his annual assessment was paid to you on the 10th day of August.

"If this is the case, the installment was delinquent when paid, and in view of his ill health and death we do not see how you could have legally accepted it. Kindly write us fully concerning the facts in the case."

Here is the only testimony to show when the Sovereign Camp became aware that the installment had been paid after the death of the insured. To this letter Mr. Ellis replied, under date of September 19, as follows:

"As explained in my previous letter, also in proofs of death blanks, Sov. Perry died on August 9, 1932, and his dues were sent to me by his family on August 10, 1932, for the payment of July installment. This same day, August 10th, I sent a special remittance to your office in payment of July installment, and in the letter accompanying the remittance I stated that Sov. Perry passed away on August 9th.

"As to the facts you request in this case I know of none further than I have given you."

That letter was received in Omaha several days later. October 6, 1932, the claim department wrote to Mrs. Perry, the beneficiary under the certificate in this case and plaintiff in this action, notifying her that the claim had been rejected, and giving her the reasons for that action, and returning to her the premium she had paid after Mr. Perry's death, and on the same date wrote the local camp to the same effect.

Surely there is in this no proof of undue retention of the premium paid by the beneficiary which estops defendant from denying liability.

The insured, John T. Perry, when he became a member of the order, expressly covenanted and agreed to be bound by the by-laws, rules, and regulations and constitution of the order.

Section 65 thereof, in part, provides that: "Any member who becomes suspended because of non-payment of any in-

stallment of assessment, *if in good health* may within three calendar months from the date of his suspension again become a member, \* \* \* payment shall be held to warrant that he is at the time of making such payment in good health \* \* \* and to contract that such assessments when so paid after he has become suspended for non-payment of assessments shall be *received and retained* without waiving any of the provisions of this section or of these laws until such time as the Secretary of the Association shall have received *actual, not constructive, or implied* knowledge that the person was not in fact in good health. when he attempted again to become a member." (Italics added.)

Again Section 66 provides: "The retention by the As-. sociation of any installment of assessment paid by or for any person after he has became suspended in order to make him again a member *shall not constitute a waiver* of any of the provisions of this constitution, laws and by-laws, or an estoppel upon the Association." (Italics added.)

■ This is what the insured contracted to be bound by as a member of the order. His beneficiary is likewise bound.

■ It was error to permit the introduction in evidence of the notification cards sent out by the financial secretary of the local camp of his own initiative, and unauthorized by the laws of the Sovereign Camp, and their use not shown to have been known to it.

■ The Circuit Judge who tried this case let his magnanimous heart run away with his judgment, in overruling the motion for nonsuit, when he said: "The Courts will seize on any circumstance to prevent a forfeiture, and this Court is going to reach out right far to find some circumstance to prevent a forfeiture, I may be seizing on air, but I don't think so."

It is true that the law abhors a forfeiture, but it does not assume to "prevent" one unless there is a foundation in fact or law to justify it. The sympathetic heart of the presiding

Judge induced his generous hand to close on empty air in his effort to prevent a forfeiture. Naturally he sympathized with the plaintiff in this action, and his sympathy led him to lose sight of the fact that this fraternal order is made up of a great many thousands of persons whose insurance rights can only be protected and saved by the enforcement by the Sovereign Camp of the rules, the by-laws, and the constitution of the order which the members themselves have adopted. The payment of claims which are forfeited by the laws of the order reduces and endangers the security of the claims rightfully due under and protected by these laws. Claims are paid by assessments on the members. It is manifestly unfair to entail such assessments on the members who have maintained themselves in good standing, in favor of those who through neglect or misfortune have failed to do so.

The judgment appealed from is reversed, and the case is remanded to the Circuit Court with direction to enter judgment for defendant under Rule 27.

MR. CHIEF JUSTICE BLEASE, MR. JUSTICE STABLER and MR. ACTING ASSOCIATE JUSTICE W. C. COTHRAN concur.

MR. JUSTICE CARTER concurs in result.