14106

KIZER v. WOODMEN OF THE WORLD

(180 S. E., 804)

*Mr. M. E. Zeigler,* for appellant,

*Messrs. Lide & Felder,* and *C. E. Summers,* for respondent,

July 9, 1935.

The opinion of the Court was delivered by MR. JUSTICE BAKER.

In 1912, appellant became a member of respondent, a fraternal organization with insurance features, having subordinate lodges or camps in various states of the Union, and one at Holly Hill, S. C., known as Holly Camp No. 148, and it was through this local camp that appellant joined this association, and there was issued to him a certificate of membership in the face amount of $1,500.00. Subsequently, in 1919, a new certificate was issued to appellant by reason of a change of beneficiary, and again in 1920 the certificate which had been issued appellant in 1919 was exchanged for a new form certificate known as universal whole life certificate, in the sum of $1,500.00, which bound respondent to pay to the beneficiary therein named the face amount of $1,500.00 upon the death of appellant; or to pay the appellant one-half of that amount in case he became totally and permanently disabled under the terms and conditions stated in the certificate of membership, and complied with the requirements therein presented. This certificate, as did the others, provided that it was issued and accepted subject to all of the conditions set forth therein and the provisions of the constitution, laws, and by-laws in relation to membership, and further subject to the terms and provisions of the articles of incorporation and the constitution and laws of respondent, and all amendments to each thereof, which may be made thereafter, etc.

The appellant claims that said beneficiary certificate was in full force and effect when he became totally disabled as of July 1, 1932, and that under the terms thereof he was entitled to surrender his certificate and receive from re-

spondent $750.00, with interest on this amount from the date he filed his claim, March 9, 1933, and all dues paid on account of his membership in said association since his disability. The respondent admits in its answer that the certificate held by appellant entitled him to one-half of the face amount of his certificate as a permanent total disability benefit under certain conditions fully set out in the answer, but denies that appellant had furnished satisfactory proof of permanent and total disability as provided by the constitution, laws, and by-laws of the association, and that appellant is permanently and totally disabled under the terms and provisions of its constitution, and denies that he is entitled to disability benefits at all, and further denies that he was a member of the association at the time he requested blanks to be furnished for the purpose of making application for permanent and total disability. Paragraphs 7 and 8 of the answer of respondent are as follows:

"7. Further answering the defendant alleges that plaintiff became suspended and forfeited his membership in this Association on March 1st, 1930, by reason of his non-payment of the February, 1930, installment and he remained in suspension until the month of November, 1931, when he made application for reinstatement under a special proposition which was made to him by the furnishing of a health certificate and the payment of the October, 1931, and agreement to pay all subsequent and following installments, the installments of dues and assessments from February, 1930, to September, 1931, were included amounting to Forty-four and 40/100 ($44.40) Dollars, being charged against this Certificate with interest to accumulate thereon from the date of his reinstatement; and the said plaintiff under date of November 11th, 1931, executed and delivered to defendant the following agreement:

" 'The undersigned member, in consideration of the fact that he is to be restored to membership in the Association, providing this application is approved by the President and the Medical Director of the Sovereign Camp of the Wood-

men of. the World, hereby agrees that his monthly rate for the installments due at the date of lapsation, and the subsequent installments accrued during the period of his suspension, be charged against his certificate with interest at the rate of five per cent. per annum compounded annually. The amount of said charge, together with the interest thereon, to be deducted from the proceeds of his certificate at the maturity of same.

" 'In further consideration the undersigned, as a condition precedent to reviving his certificate, hereby warrants that he is in sound bodily health and free from any disease or impairment of any nature whatsoever, and that during the past five years he has not suffered from any mental or bodily infirmity resulting from accident or disease, except as follows:   *   *   *'

"8. That plaintiff failed to carry out the terms and conditions upon which he was reinstated to membership as hereinabove stated and failed to continue in prompt and regular payment of monthly installments required to maintain his Certificate in force after the month of September, 1932, and he·again became suspended and his Certificate became void on November 1st, 1932, by reason of the non-payment of the October installment. Subsequently, in December, 1932, plaintiff made a request for the blanks to apply for permanent total disability benefit and that at that time he had become suspended and his Certificate had become null and void and he was not entitled to any benefits."

At the conclusion of the testimony for appellant and respondent, the respondent made a motion for a directed verdict in its favor on six grounds; the first five relating to the alleged suspension of appellant for failure to pay his dues in October, 1932, and the sixth ground referred to the reinstatement of appellant on November 11, 1931; said sixth ground being as follows:

"6. That the plaintiff was not in sound bodily health and free from disease or impairment of any nature whatsoever on November 11th, 1931, when he warranted such

to be the case as a condition to reinstatement to membership at that time, and it appears from the testimony that plaintiff was not in sound bodily health and free from disease or impairment at that time, unknown to defendant, and the attempted reinstatement at such time was ineffective and does not bind the defendant."

The Circuit Judge, in directing a verdict for respondent, ignored the first five grounds relating to the suspension of appellant for October dues in 1932, and granted respondent's motion on the sixth ground.

All of appellant's exceptions relate to the granting of the motion on said sixth ground. The first eight pages, including the "statement" of respondent's main brief, consists of argument to sustain the direction of verdict in its behalf on the first five grounds. The Court will be unable to consider the grounds for directed verdict relating to the suspension of appellant for October, 1932, dues, for the reason that these grounds were not passed upon by the trial Court, and respondent gave no notice that it intended to rely on these grounds to sustain the trial Judge, and in the preparation of the transcript of record it would appear from the briefs that a full and complete transcript of all the testimony has not been furnished this Court. It is true that it was agreed that any documents admitted in evidence upon the trial of the case and the original transcript of the testimony of the stenographer could be filed in the Supreme Court for reference, both by the attorneys in the argument of the case and by the members of the Court, but this Court has not been furnished with anything other than the printed transcript of record and the printed briefs or arguments. If respondent intended to rely on its first five grounds for a motion for a directed verdict, relating to the suspension of appellant in October, 1932, it was necessary to give notice that it intended to so rely on these additional grounds to sustain the Circuit Judge and thus place this Court in position to pass upon said grounds. *Asbill v. Martin,* 84 S. C., 271, 66 S. E., 297; *Burkhalter*

*v. Townsend, Adm'x,* 160 S. C., 134, 158 S. E., 221; Rule 4, § 7, Supreme Court.

The appellant comes to this Court on six exceptions from the order of the trial Judge directing a verdict in favor of respondent, and in his printed argument reduces the questions to three, as follows:

"1. Did the Court err in directing a verdict for the defendant on the ground that the statement made by the plaintiff to reinstate his insurance was a warranty of good health which was untrue and forfeited his insurance?

"2. Should not the Court have allowed the plaintiff to show his good faith in making the statement referred to and his belief that the statement was true at the time it was made?

"3. Even though the statement in question be regarded as a warranty, should not the Judge have submitted to the jury the question of the breach of the warranty—which was a question of fact, depending on whether the plaintiff was in good health at the time the statement was made, about which the testimony was conflicting?"

Nos. 1 and 2 may be discussed together, since if the statement made by appellant to reinstate his insurance in November, 1931, was a warranty and not merely a representation, then, of course, appellant could not show his good faith and belief as to the truth of his statement at the time it was made.

Appellant's second exception raises the question that the Court erred in directing a verdict for respondent on the ground of breach of warranty of good health on the part of appellant when the defense of warranty of good health had not been pleaded in the answer; but it is unnecessary to definitely pass upon whether or not this defense was sufficiently pleaded in order for respondent to avail itself thereof, in view of the fact that this case will be sent back for a new trial for other reasons, and, of course, if respondent was not entitled to the benefit of this defense under the pleadings as made, the case would still have to go back to

the Circuit Court for a new trial, and respondent can in either event avail itself of this plea, upon proper motion, to amend its answer to specifically plead breach of the warranty.

In November, 1931, appellant applied to be reinstated as a member of respondent's association. As a condition to reinstatement respondent required him to sign the statement contained in Paragraph 7 of respondent's answer, hereinbefore set out in full.

It will be noted that this "statement" does not say that appellant "represents" but that he "warrants" that he is in. sound bodily health and free from any disease or impairment of any nature whatsoever, and that during the past five years he has not suffered from any mental or bodily infirmity resulting from accident or disease. In addition to this, every provision of the constitution, laws, and by-laws of respondent, relative to reinstatement of members who have become suspended for nonpayment of dues (the constitution, laws, and by-laws are a part and parcel of the contract), states that the payment of such back dues for the purpose of again becoming a member is held to warrant that such member who has become suspended is at the time of again becoming a member in good health, and to warrant that he will remain in good health for 30 days after such attempt to again become a member.

In all cases we have examined, where there was any question raised as to whether the statements contained in the application for insurance were warranties or representations, there was other language used which was susceptible of the intent of the parties being that the statements were representations and not warranties; but in the instant case, no other word is used except "warrants," and it was upon this condition, and as a part of the contract, that respondent reinstated appellant as a member, and without requiring a medical examination. This is not at all in conflict with the proposition that statements denominated "warranties" by the most emphatic and specific declarations in an instrument

to that effect will be held to be representations, if there should be contradictory provisions showing a purpose to treat them as such, and not as warranties, or explanatory expressions indicating the same purpose.

The difference between warranties and representations is often very vital. Construed as a warranty, the falsity of the statement amounts to an express breach of the contract, regardless of the good faith and honest purpose of the insured, and the statement does not have to be material, it has been held in some cases; construed as a representation, the falsity of the statement may render the contract voidable when it is shown to have been material to the risk and knowingly made. A representation is usually made in proposing a contract; a warranty is made when it "is a part of the completed contract, either expressly inserted therein, or appearing therein by express reference to statements expressly made a part thereof." 3 Joyce, Ins. (2d Ed.), No. 1882, and cases cited thereunder.

In the case of *Gambrill v. Insurance Co.*, 83 S. C., 236, 65 S. E., 231, 232, Gambrill in his application for insurance warranted his answers to be true, and in which he stated that he had not received any medical or surgical treatment during the past five years. The application was signed June 18, 1906. It appeared he had been operated upon in a hospital in December, 1905; the operating physician did not know it was a cancer, and did not notify the insured he had a cancer until in August, 1906, after the policy had been issued; the insured died in 1907. In affirming a verdict in favor of defendant insurance company, this Court in an unanimous judgment, the opinion being written by the late Mr. Chief Justice Gary, then Associate Justice, held: "The statement which the assured warranted to be true was that he had not had medical or surgical treatement within the past five years; and he knew. or is presumed to have known, that this statement was false. The fact that he did not know that he had cancer until August, 1906, did not destroy the effect of the statement,

which he knew, or is presumed to have known, was false, and which he warranted to be true."

Having reached the conclusion that the statement made by the appellant at the time he was reinstated as a member of respondent is a warranty and not a representation, it necessarily follows that the Court was not in error in refusing to allow appellant to show his good faith in making the statement referred to and his belief that the statement was true at the time it was made.

We now come to the third question. Appellant, as a witness for himself, testified as follows:

Folio 42:

"Q. When did you get sick? A. July 1st, 1932.

"Q. What was the matter? A. Varicose veins.

"Q. What else? A. Internal bleeding piles, and a hernia.

"Q. Anything else? A. Chronic prostatitis."

Folios 45 and 46:

"Q. You say your disability commenced July 1st, 1932? A. Yes, sir.

"Q. Did this disability come on you suddenly? A. No, sir.

"Q. How long had you been in bad health before that time? A. The first time that I had treatment for the prostatitis condition.

"Q. What was the first thing that you consulted a physician about? A. Hemorrhoids.

"Q. Who was the physician you consulted? A. Dr. Wells.

"Q. When? A. July 1st.

"Q. Then you were immediately disabled? A. It might have been two or three weeks previous to that time."

Folio 48:

"Q. You did not have any of these ailments at all a year before July 1st? A. No, sir.

"Q. None of them in 1931? (This was the year in which the statement was made.) A. No, sir.

"Q. All of these ailments came on you in a period of a short time? A. In a month or two."

Folios 50 and 51:

"Q. Did you have all four of these ailments on or before July 1st, 1932? A. No, sir.

"Q. What did you have? A. Hermorrhoids, varicose veins and the prostatic trouble.

"Q. You had those three ailments? A. Yes, sir.

"Q. In July 1st, 1931? A. 1932.

"Q. How long prior to that time did you have any one or more of those troubles? A. Probably two or three weeks or a month."

Dr. L. P. Thackston, a witness for plaintiff, to prove his total disability as it existed on July 1, 1932, and continued to exist, gave testimony that he had been treating appellant for three years for chronic prostatitis, and it was on this testimony that the trial Judge directed a verdict for defendant, having held, and correctly so, that the statement given by appellant in November, 1931, was a warranty and not a representation.

This case was tried on June 14, 1933, and, therefore, if Dr. Thackston had been treating appellant for three years, appellant was suffering on November 11, 1931, from bodily infirmity resulting from disease.

The case of *Anderson v. Hampton & B. R. & L. Co.,* 134 S. C., 185, 132 S. E., 47, came to this Court because of the failure to the trial Judge to direct a verdict in favor of defendant. The Court, speaking through Mr. Justice Blease, had this to say in 134 S. C., 185, at page 187, 132 S. E., 47, 48:

"This court has held that, when a motion for a directed verdict is made, the evidence in the cause must be considered most favorably to plaintiff in determining whether the directed verdict should have been granted. *Crews v. Sweet,* 125 S. C. [303], 306, 118 S. E., 613, 29 A. L. R., 43. And it has been decided that, not only should questions of fact be submitted to the jury when they are in dispute, but also the matter is proper for the jury to pass upon when the question

is as to inferences to be drawn from such facts, after the facts have been determined. *Richardson v. N. W. Railroad Co.,* 124 S. C. [314], 326, 117 S. E., 510.

"While the presiding Judge stated that the 'question was a very close one,' we think he was right in allowing the case to go to the jury. The record shows some contradictions in the testimony of the plaintiff, but all these contradictions, as well as his credibility, were matters for the jury to decide."

In *Trowbridge v. Railway Co.,* 90 S. C., 183, 73 S. E., 78, the testimony set forth is very meager, but we find this statement: "It was also the province of the jury to solve the alleged contradiction in the testimony of the plaintiff himself."

In the recent case of *Oakman Service Station, Inc., v. People's Oil Co.,* 174 S. C., 517, 178 S. E., 129, 130, the Court quoted with approval from the case of *Lower Main Street Bank v. Caledonian Insurance Co.,* 135 S. C., 155, 133 S. E., 553, 555, the following: "The well-established rule in this state is that if there is any testimony whatever to go to the jury on an issue involved in a cause, or even if more than one inference can be drawn from the testimony, then it is the duty of the judge to submit the cause to the jury. This is true, even if witnesses for the plaintiff contradict each other, or if a witness himself in his testimony makes conflicting statements. The credibility of witnesses is entirely for the jury. On a motion for a directed verdict, the evidence in the cause must be considered most favorably to the plaintiff."

Under the authority of the foregoing cases, when it appeared from the testimony of plaintiff that he did not have prostatic trouble on November 11, 1931, the date the statement was signed, having testified that he did not have any of the troubles from which he was claiming total disability until two or three weeks prior to July 1, 1932, even though his witness, Dr. Thackston, had testified he had been treating appellant for three years, more than one inference could

have been drawn from the testimony, and the trial Judge should have submitted to the jury the question if in fact appellant had on November 11, 1931, prostatic trouble, or any other bodily disease whatsoever.

The case is remanded to the Circuit Court for a new trial.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES CARTER, BONHAM and FISHBURNE concur.