14946

PILOT LIFE INS. CO. v. PEEBLES *ET AL.*

(5 S. E. (2d), 174)

December, 1938.

*Messrs. Smith, Wharton & Hudgins, Mays & Feather-stone* and *Thomas, Cain & Black,* for appellant, ▮

*Mr. Ralph J. Syfan,* for respondents, ▮

October 20, 1939.

The opinion of the Court was delivered by MR. JUSTICE BAKER.

This was an action brought by Pilot Life Insurance Company in the Court of Common Pleas for Abbeville County against Wilson L. Peebles, and others, individually and as a class representing all other persons similarly situated as policyholders of said insurance company in South Carolina, holding policies or contracts of insurance of a similar nature issued by Pilot Life Insurance Company, the appellant herein, to determine the rights and liabilities of the appellant under the "Nonforfeiture Privileges" clauses of the policies to its policyholders in South Carolina who have borrowed on their policies and then permitted their policies to lapse, and have failed to elect as to options provided in the policy.

The case of *Pressly v. Pilot Life Insurance Company,* reported in 186 S. C., 209, 195 S. E., 332, which involved a policy of insurance identical in terms with the ones under consideration, came to this Court on a record not so comprehensive as in this case. In that opinion, while the Court agreed with the holding in *Dwyer v. Metropolitan Life Ins. Co.,* 132 S. C., 10, 129 S. E., 84, the *Dwyer case* was in effect overruled, and there was established an entirely different liability on the part of Pilot Life Insurance Company than that contracted. The *Pressly case* was decided upon the erroneous theory that there was a discrimination between borrowing and nonborrowing policyholders made by the Pilot Life Insurance Company against the borrowing policyholders in computing the *amount* of the extended insurance for the terms provided in the "Table, Column III, Extended Insurance (Automatic)" set out in the policy.

The trial Judge in the instant case not only followed the *Pressly case,* but broadened the holding therein to the ex-

tent that appellant herein would be unable to determine with any degree of definiteness or accuracy its liability to its lapsed policyholders, and in appealing from this order or decree, appellant sought and obtained the permission of this Court to review and criticize the *Pressly case.*

The record in this case discloses that there is no provision of the policies issued by the appellant, either in the *Pressly case* or the instant case, which discriminates between non-borrowing policyholders and borrowing policyholders as regards the option allowed, and the right of selection of options; and upon the failure to exercise the right to select an option, the automatic provision of the policy becomes effective both as to nonborrowing policyholders and borrowing policyholders without discrimination. And there is no provision in the policies under consideration which gives the insurer in the event of a lapse of the policy, the right to apply the cash surrender value of the policy to extended insurance in an amount greater than such net surrender value will purchase for the term provided in the policy for extended insurance. In other words, under the contract of insurance, the appellant has not the right to change the terms of the contract by shortening the term for which insurance is automatically extended and increasing the amount thereof, and conversely the insured has not the right to enforce any such nonexistent provision.

It will therefore be unnecessary for us to discuss the *Pressly case* or the cases of *Emig v. Mutual Benefit Life Insurance Co.,* 127 Ky., 588, 106 S. W., 230, 232, 23 L. R. A. (N. S.), 828; *New York Life Ins. Co. v. Scheuer,* 198 Ala., 47, 73 So., 409, and *Ringstad v. Metropolitan Life Ins. Co.,* 182 Wash., 550, 47 P. (2d), 1045, 106 A. L. R., 1532, or Section 1921, Code of 1932, upon which the holding in the *Pressly case* was predicated.

What the appellant is interested in ascertaining is: Shall a borrowing policyholder be bound, as likewise the insurer, by the terms of the contract of insurance, or by the decision

in the *Pressley case*? That a borrowing policyholder or his beneficiary has not the right to elect by which he will be bound requires no discussion.

It might be well at this time to record that the uncontradicted testimony is that on policies already lapsed, if the provisions of the policy are controlling, there would be $2,00,000.00 of insurance payable to 600 policyholders; while if the decision in the *Pressly case* is applied, this $200,000.00 would be payable to 150 policyholders; and this $200,000.00 liability to the 600 policyholders will extend over a period several times longer than to the 150 policyholders. While this fact can in no wise affect our holding herein, in the writer's opinion it is due the appellant that it be known that its construction of its policy of insurance is favorable to the greatest number of policyholders. And daily policies are lapsed by reason of the nonpayment of premiums, which is not peculiar to policies issued by this appellant.

The pertinent part of the policies under discussion is as follows:

"Nonforfeiture Privileges

"After three years' premiums shall have been paid in full, if default shall be made in the payment of any subsequent premium, this Policy will be entitled to the following privileges:

"Cash Surrender Value:—The Insured on legal surrender of this Policy to the Company at its Home Office within thirty-one days after the due date of such premium may receive the Cash Surrender Value (The value for each $1,000 of insurance is given in Column I of the table below): provided, that the Company reserves the right to defer such payment of Cash Surrender Value, in whole or in part with interest at six percent per annum, for a period not exceeding six months from the date that written request therefor is filed with the Company at its Home Office, in case the

Company should judge such course to be necessary for the protection of the other policyholders; or

"Paid-Up Insurance:—In lieu of such Cash Surrender Value, provided there is no prior indebtedness hereon, the Insured may elect, by written request filed at the Home Office within the same period, and accompanied by this Policy for proper endorsement, to have this Policy continued from said date as Nonparticipating Paid-up Insurance for a reduced amount according to the number of years' premiums paid. (The amount for each $1,000 of insurance is given in Column II of the table below) ; or

"Automatic Extended Insurance:—If no election of Paid-up Insurance or Cash Value is made by the Insured within the periol designated, the insurance hereunder shall automatically be continued from the date of default as Nonparticipating term insurance, for the period indicated in Column III of the table below, corresponding to the number of years' premiums paid. This policy, so continued may be surrendered at any time for its full reserve value at the time of surrender.

"Basis of Reserves and Values:—Reserves will be maintained on this Policy based on the American Experience Table of Mortality, Modified Preliminary Term, with interest at the rate of three and one-half percent per annum. The Guaranteed Values in the accompanying table are based on the reserves, less a surrender charge of not more than two and one-half percent of the face of the Policy. Payment of part of a year's premium, not less than a regular quarterly instalment, shall ratably increase the values.

"Table Above Mentioned for Each $1,000 of Insurance Conditioned upon There Being No Indebtedness Hereon

| After all Premiums are paid for Years | Column I Cash surren- der Value Loan Value* | Column II Paid-Up Insurance | Column III Extended Term Insurance (Automatic) | |
|---|---|---|---|---|
| | | | Years | Mos. |
| 3 | $ 32 | $ 66 | 2 | 10 |
| 4 | 49 | 100 | 4 | 3 |
| 5 | 67 | 135 | 5 | 8 |
| 6 | 85 | 171 | 7 | 0 |
| 7 | 103 | 206 | 8 | 1 |
| 8 | 122 | 240 | 9 | 1 |
| 9 | 141 | 275 | 10 | 0 |
| 10 | 161 | 309 | 10 | 9 |
| 11 | 180 | 340 | 11 | 3 |
| 12 | 201 | 370 | 11 | 8 |
| 13 | 221 | 399 | 12 | 0 |
| 14 | 242 | 427 | 12 | 3 |
| 15 | 263 | 455 | 12 | 5 |
| 16 | 284 | 481 | 12 | 7 |
| 17 | 305 | 507 | 12 | 7 |
| 18 | 327 | 531 | 12 | 7 |
| 19 | 348 | 555 | 12 | 7 |
| 20 | 370 | 578 | 12 | 6 |

*(Left margin, rotated: Ordinary Life. Age 41.)*

"If this Policy is continued in force beyond twenty years, the above table will be extended on request.

"*The maximum loan value is obtained by deducting interest in advance, from the values here given, to the end of the current policy year.

"Indebtedness Reduces the Values of the Above Options: —Any indebtedness to the Company existing at the time of default in premium payment shall be deducted from the full Cash Surrender Value, and the amount of Extended Term Insurance or Paid-up Insurance, granted in such case, shall be reduced in the proportion such indebtedness bears to the full Cash Surrender Value."

We will discuss only the policy of the respondent, Wilson L. Peebles, bearing the number 49671 and in the sum of $5,-000.00. It would be impracticable to discuss each policy sep-

arately and also unnecessary, since the same principle will apply, the wording of the various policies being identical.

When the respondent, Peebles, allowed his policy to lapse he had paid premiums thereon for eight and one-half years, and under the table, Column I, this policy had a cash surrender value of $657.50. If this respondent had not borrowed against this cash surrender value, he would have had the privilege of surrendering the policy and collecting this amount in cash in accordance with the "Cash Surrender Clause" hereinabove set out. Or he could have had "Paid-Up Insurance" in accordance with the amount as provided in Column II of the "Table." Failing to elect, then the "Automatic Extended Insurance" clause of the policy would have automatically gone into effect, and he would have had insurance for the full face amount of the policy for nine years and nine months from November 3, 1930, date of lapse of policy, or until May 3, 1940.

This respondent had however borrowed $605.00 against the cash surrender value of his policy, and upon the date of the lapse of the policy, November 3, 1930, he was due appellant this $605.00, and interest thereon of $9.08, making a total of $614.08, and therefore had a net equity of $43.42 in cash surrender value.

He had the privilege of collecting this amount in cash from appellant, or receiving "Paid-Up Insurance" in such proportion to the amount in Column II of the "Table" as $43.42 would buy. And failing to elect, which he did, the automatic clause of the policy became effective and he was entitled to extended-term insurance for nine years and nine months in an amount in the proportion his indebtedness bore to the full cash surrender value, which in the instant case is admittedly $330.00.

Appellant's counsel have given better understandable illustrations by stating the matter thusly: If this respondent had borrowed 50% of the cash surrender value of his policy he would have been entitled to extended-term insurance in the sum of $2,500.00 for nine years and nine months; if

age, state of health, etc., are equal, one person may purchase $10,000.00 insurance for five years, and another $5,000.00 insurance for ten years for the same premium or consideration.

It will be seen that under the terms of the policy, ■ there is no discrimination whatsoever as between borrowing policyholders and nonborrowing policyholders, but they are given insurance in accordance with what their money will purchase on identically the same basis.

Before leaving the issue of "discriminations" it might not be amiss to call attention to the words "provided there is no prior indebtedness hereon" appearing in the "Paid-Up Insurance" privilege. These words undoubtedly refer to the amount of the "Paid-Up Insurance" since the "Indebtedness Reduces the Values of the above Options" clause reads: "Any indebtedness to the company existing at the time of default in premium payment shall be deducted from the full Cash Surrender Value, and the *amount of Extended Term Insurance or Paid-Up Insurance* granted in such case * * * ." (Italics added.)

The real issue before the Court is: Does the reduction provided for by the policy where there is an outstanding loan apply to the extended term of the policy or to the amount?

The contract or policy of insurance is that the reduction shall apply to the *amount*. It is a postulate that contracts otherwise valid which are not against public policy are enforcible.

In *Pilot Life Insurance Company v. Owen,* 31 F. (2d), 862, the Circuit Court of Appeals for the Fourth Circuit (our Circuit) construed a provision of a policy of this appellant which is identical with the provision in the instant case, and in deciding the case cited with approval *Dwyer v. Metropolitan Life Ins. Co.,* 139 S. C., 377, 137 S. E., 347. In discussing this matter, the Court said (31 F. (2d), 865):

"The sole remaining question, therefore, is: To what amount of extended insurance was the insured entitled? We have seen that the cash surrender value of the policy at the

time of the death of the insured would have been $741.25 if there had been no indebtedness. However, he then owed the Company $706.44, leaving as a net cash value of the policy only $34.81. Had the insured elected to take the cash surrender value, this is the sum which he would have been entitled to receive; and, similarly, had he elected to receive paid-up endowment insurance, it would have been the basis for estimating the amount of such insurance. But he failed to exercise his option, and $34.81 was thus required to be taken as the basis upon which the amount of extended insurance should be calculated according to the table provided for this purpose, with the result that this amount is shown to be $235, the sum admitted and tendered by the Company as due and owing.

"Plaintiff contended, and the lower court held (in its opinion denying the motion for new trial), that the reduction created by reason of the existing indebtedness of the insured was *in the time* of the extended insurance and not *in the amount* for which such insurance was continued; in other words, that the ratio '43.81/741.25 of $5,000.00 equals * * * $235.00,' for which the Company contends, is not correct, but that the correct ratio is '34.81/741.25 of 11 years and 4 months, or 136 months equals * * * 6.38 months.' The plaintiff further claims that assuming the adopted ratio to be correct, the calculation should have been upon $7,500 instead of upon $5,000, because unless and until the insured reached the age of 60, he was required to pay premiums on $7,500 and not on $5,000. Calculated on the last-mentioned basis, the amount of extended insurance would be approximately $2,700.

"We are satisfied that both of these contentions are unsound. As to the first, it is sufficient to say that the policy expressly provides that 'the *amount* of extended term insurance * * * shall be reduced in the proportion such indebtedness bears to the full cash surrender value' (italics inserted), and to say that the word 'amount' thus used refers to time and not to money would be to torture the **very**

language of the provision itself. There is no ambiguity in the language. As to the second contention, it is sufficient to say that extended insurance is expressly declared to be $5,000, namely, the amount of insurance which would have been payable to insured if living at the age of 70, provided the policy had been kept in force by payment of premiums. The method of calculation here adopted is consistent with that in *Dwyer v. Metropolitan Life Insurance Co.,* 139 S. C., 377, 137 S. E., 347, and is also entirely consistent with the decision of this court in *Pacific Mutual Life Insurance Co. v. Davin* (C. C. A.) [5 Cir.], 5 F. 2d 481. See also *Federal Life Insurance Co. v. Kemp* (C. C. A.) [7 Cir.], 257 F. 265.

"It is contended by the plaintiff that the conclusion here reached is unduly harsh—that forfeitures are to be avoided, and that a construction of the policy is to be adopted which is most favorable to the assured. Provided there is ambiguity, these principles are not open to question. *McMaster v. New York Life Insurance Co.,* 183 U. S. 25, 22 S. Ct. 10, 46 L. Ed. 64; *Mutual Life Insurance Co. of New York v. Hurni Packing Co.,* 263 U. S. 167, 44 S. Ct. 90, 68 L. Ed. 235, 31 A. L. R. 102. But there is no ambiguity in the present policy, nor can there be any unreasonableness in requiring one to do what he has voluntarily contracted to do. The time of payment of premiums is material and of the very essence of the contract. 'Courts cannot with safety vary the stipulation of the parties by introducing equities for the relief of the insured against their own negligence.' *New York Life Insurance Co. v. Statham,* 93 U. S. 24, 31 (23 L. Ed. 789)."

The case of *Dwyer v. Metropolitan Life Ins. Co.,* referred to hereinbefore, was before this Court three times, and is reported in 132 S. C., 10, 129 S. E., 84, *Id.,* 135 S. C., 303, 133 S. E., 547, and as above stated.

In the *Dwyer case* the policy had a provision which in principle is practically identical with the policy in the instant case, the only difference being that where there was a fail-

ure of election of options, the second option for paid-up insurance automatically became effective. In that case the question was not raised as to whether the provision of the policy was against public policy or whether it was in violation of Section 1921 of the Code as being a discrimination as between borrowing policyholders and nonborrowing policyholders. However, it has already been herein demonstrated and decided that there is no discrimination.

The terms of the policy invoked in the *Dwyer case* are as follows (132 S. C., 10, 129 S. E., 85) : " 'Options on Surrender or Lapse.—Upon failure to pay any premuim or any part thereof when due, this policy, except as otherwise provided herein, shall immediately lapse, if, however, the lapse occur after three full years' premiums shall have been paid the owner hereof, provided there be no indebtedness hereon, shall, upon written request with the company at its home office, together with the presentation of this policy for legal surrender or for indorsement within three months from the due date of the premium in default, be entitled to one of the following options : First. A cash surrender value, * * * Second. To have the insurance continued for a reduced amount of nonparticipating paid-up insurance. * * * Third. To have the insurance continued for its original amount as term insurance in whole number of months from due date of premium in default. * * * If the owner shall not, within three months from due date of premium in default, surrender this policy to the company at its home office for a cash surrender value or for indorsement for paid-up insurance or term insurance as provided in the above options, the policy shall be continued for a reduced amount of paid-up insurance as provided in the second option. * * * Any indebtedness to the company under this policy will be deducted from the cash value; and such indebtedness will also reduce the amount of paid-up insurance or the amount continued as term insurance in such proportion as the indebtedness bears to the cash value at due date of premium in default.' "

· In writing the opinion of the Court (first appeal), the eminent and learned Mr. Justice Marion said: " * * * The mere admission of the defendant that the policy at the time of the alleged breach of conditions as to payment of premiums had a cash surrender value of $34.54 did not, as a matter of law, apart from the terms of the contract, require that the insurer should keep the insurance in force for the full amount of the policy for such time as the cash value would carry it. *Terry v. Insurance Co.,* 90 S. C., 1, 72 S. E., 498. The provisions of the contract as to the option granted the policy owner in the event of the nonpayment of a premium, after payment of three full years' premiums, worked no forfeiture of the policy owner's rights, but merely defined and safeguarded them. If the insured in the case at bar had lived beyond the time the cash value would have carried the policy for the full amount, and suit had been brought by the beneficiary to recover the reduced amount of insurance provided by the second option, obviously the defendant could not have escaped liability upon the ground that it had applied the cash in hand to keeping the policy in force for the full amount for a period which expired before the insured's death. * * * "

Upon the second appeal in the *Dwyer case,* 135 S. C., 303, 133 S. E., 547, 548, through another eminent Justice, the Honorable T. P. Cothran, the Court said:

"The plaintiff, by the proposed amendment, takes the position that the company wrongfully and fraudulently deducted the amount of the loan which had been made to the insured from the cash surrender value of the policy; that otherwise the cash surrender value would have been sufficient to carry the policy, for the full amount, beyond the death of the insured; and that for that reason the policy was in force at the time of his death.

"A complete answer to this contention is that there is no provision in the policy which gives the insured the right to apply the cash surrender value of the policy to extended in-

surance for the full amount of the policy, in the event of a lapse of the policy. Assuming, therefore, that the cash surrender value at the time of the lapse was $66, plus $34.54, $100.54, there appears no basis for the plaintiff's contention that this should have been applied to extended insurance, carrying the policy beyond the death of the insured.

"Besides, as we have seen, the former opinion of this court has confined the company to its rights and obligations under the second option. It is liable to the beneficiary only for a reduced amount of nonparticipating paid-up insurance; and, as a corollary, the beneficiary is only entitled to that."

And again, upon the third appeal, *Dwyer v. Metropolitan Life Ins. Co.*, 139 S. C., 377, 137 S. E., 347, which resulted from an incorrect formula in the opinion in the second appeal being followed in determining the amount of the paid-up insurance, the same Justice writing the opinion of the Court, applied a new and correct formula, which when applied to the instant case produces the amount the appellant herein contends the respondent has in term insurance for the period of time stated in the "Table" in the policy—nine years and nine months from the date of its lapse.

Even had there been a discrimination as between nonborrowing policyholders and borrowing policyholders, the Courts could only enforce the contract in accordance with the rights and privileges which the nonborrower would have, assuming of course that any discrimination would be in favor of the nonborrowing policyholder. In holding that the borrowing policyholder, or the beneficiary at any time following the lapse of such policy, may elect to use the net sum of the cash surrender value of the policy —that is, the cash surrender value as shown in the "Table," after deducting therefrom the amount of the loan, and any accrued interest, in purchasing paid-up insurance for the full face of the policy, less the amount of the loan, for such time as such net value would carry this amount of insurance—the trial Judge erred, although in reaching this con-

clusion, he followed the *Pressly case*. Assuming that such right is provided in the contract, as a matter of simple arithmetic, the loan and interest is paid when the amount thereof is deducted from the cash surrender value, and the borrowing policyholder or the beneficiary would be entitled to the full face value of the policy during the abbreviated term it would be in force. But, there is no provision in the policy permitting any such option, and to allow the borrowing policyholder or the beneficiary to elect to enforce the contract of insurance on that basis would be for the Courts to write an entirely different contract than that entered into between appellant and its policyholders, one for which there has been no consideration, and thus create a · discrimination against nonborrowing policyholders. As has been said, it is the province of the Courts to construe and enforce contracts, but not to make them.

Insofar as the holding herein conflicts with the case of *Pressly v. Pilot Life Ins. Co., supra,* the *Pressly case* is overruled.

We do not feel that we are justified in enjoining lapsed policyholders, owners of policies containing the "Nonforfeiture Privileges" identical with the policies under consideration, other than the ones made parties to this action, but as to such, they are enjoined and restrained from undertaking to enforce any supposed rights and privileges under the clauses of the policies herein considered, other than on the basis hereinabove declared. There is no issue before the Court as to policies not yet lapsed which has not been passed upon in this opinion. We do not anticipate that in the face of this decision, others occupying similar positions with respondents will undertake to institute actions against appellant having for their purpose the enforcement of rights other than those herein set forth under the "Nonforfeiture Privileges" of their respective policies.

Having passed upon all controversial issues raised by this appeal, and having reached a conclusion different from that

of the trial Judge, it is the judgment of this Court that the order appealed from be reversed, and it is so ordered.

MESSRS. JUSTICES BONHAM and FISHBURNE and MR. ACTING ASSOCIATE JUSTICE L. D. LIDE concur.

MR. CHIEF JUSTICE STABLER concurs in result.

MR. JUSTICE CARTER did not participate on account of illness.