## 15002

SAULS v. SOVEREIGN CAMP, W. O. W.

(8 S. E. (2d), 500)

March, 1939.

*Messrs. Lide & Felder* and *Louis Rosen,* for appellant,

*Mr. A. J. Hydrick,* for respondent,

January 24, 1940.

The opinion of the Court was delivered by MR. JUSTICE BAKER.

The complaint in this case, omitting formal matter, alleges that in October, 1933, Lucius P. Sauls became a member of appellant association and was issued on said date Certificate TE-1156334, whereby appellant agreed to pay respondent, the beneficiary named therein, upon satisfactory proof of the death of said member, while in good standing, the sum of one thousand dollars; that Lucius P. Sauls died on June 22, 1938, while the said certificate was of force; that demand for the payment of the sum aforesaid had been made upon appellant, and payment refused, and liability denied.

The answer alleges that the certificate was issued upon the written application of Lucius P. Sauls for membership in appellant association, and he thereby consented and agreed that this application and all of the provisions of the constitution, laws and by-laws of the appellant, then in force or that might thereafter be adopted, should constitute the basis for and form a part of any beneficiary certificate that might be issued to him. Various sections of the constitution, laws and by-laws of appellant are pleaded, but it is necessary that we herein set out only a portion of Section 63, Section 65, and a portion of Section 66, and which read respectively:

"Sec. 63 (a)  In order to accumulate and maintain funds for the payment of the benefits stipulated in beneficiary certificates held by the members of this Association, as and when such benefits accrue, to maintain the reserves thereon and to provide for the payment of the expenses of the association, every member of this association shall pay to the financial secretary of his camp one annual assessment in advance each year, or one monthly installment of assessment

each month, as required by these laws or by the provisions of his beneficiary certificate, which shall be credited to and known as the Sovereign Camp fund; and he shall also pay such camp dues as may be required by the by-laws of the camp.

"(b) If he fails to make any such payment on or before the last day of the month he shall thereby become suspended, his beneficiary certificate shall be void, the contract between such person and the association shall thereby completely terminate, and all moneys paid on account of such membership shall be retained by the association as his liquidated proportionate part of the cost of doing business and the cost of the protection furnished on the life of said member from the delivery of his certificate to the date of his suspension; * * *."

"Sec. 65. Any person who has become suspended because of the nonpayment of any installment of assessment, if in good health, may within three calendar months from the date of his suspension again become a member of the association by the payment of the current installment of assessment and all installments of assessments which should have been paid to maintain him as a member. Whenever installments of assessments are paid by or for a person who has become suspended for the purpose of again making him a member, such payment shall be held to warrant that he is at the time of making such payment in good health, and to warrant that he will remain in good health for thirty days after such attempt to again become a member, and to contract that such installments when so paid after he has become suspended for non-payment of assessments shall be received and retained without waiving any of the provisions of this section or of these laws until such time as the secretary of the association shall have received actual, not constructive or imputed, knowledge that the person was not in fact in good health when he attempted to again become a member. Provided, that the receipt and the retention of pay-

ment of such installments of assessments in case such person is not in good health shall not make such person a member or entitle him or his beneficiary or beneficiaries to any rights whatever."

"Sec. 66 (b) Any attempt by a suspended person to again become a member shall not be effective for that purpose unless such person be in fact in good health at the time and continue in good health for thirty days thereafter, and the payment of any unpaid installment or assessment shall be a warranty that such person is at the time in good health and that if the warranty is not true the certificate shall be null and void."

The answer further pleaded that the insured did not pay his July, 1937, installment of premium on or before the last day of July, 1937, by reason of which he became suspended on August 1, 1937; that he did not pay his December, 1937, installment of premium on or before the last day of December, 1937, by reason of which he became suspended on January 1, 1938, and that he did not pay his February, 1938, installment of premium on or before the last day of February, 1938, and was again suspended on March 1, 1938. That at the time of the death of the insured, his certificate was not in force by reason of his warranties as to good health.

Upon a trial of the case, and at the conclusion of all testimony, appellant moved for a directed verdict, which motion was refused. The jury rendered a verdict against appellant in the full amount, with interest. No issue of waiver arose in the Court below, and of course such issue is not before this Court.

The motion of appellant for a directed verdict was predicated upon the same grounds as are the exceptions to this Court. Exceptions 1 and 2 are identical with Exception 3, other than 1 refers to the month of July, 1937, and 2 to the month of December, 1937. Exception 3 is as follows:

"3. That the Court should have directed verdict in favor of the defendant for the reason that the insured, Lucius P.

Sauls, did not pay his February, 1938, installment on or before the last day of February, 1938, and when he attempted reinstatement by the payment in March, 1938, he was not then in good health as the Constitution and laws of the defendant required that he should be, such payment being warranty of his good health; and he did not remain in good health for thirty days after such delinquent payment as was warranted by such payment."

We will confine our discussion to said Exception 3, as the case can be disposed of under this exception. In doing so, as was stated in *White v. Sovereign Camp, W. O. W.*, 184 S. C., 215, 192 S. E., 161, "we will keep in mind that salutary principle that the law abhors forfeitures, and will seize upon slight evidence to prevent one." However, there is also another salutary principle of law, heed to which was given in *Perry v. Sovereign Camp, W. O. W.*, 172 S. C., 456, 174 S. E., 397, when Mr. Justice Bonham, in writing the opinion of the Court, stated while "it is true that the law abhors a forfeiture, * * * it does not assume to 'prevent' one unless there is a foundation in fact or law to justify it." It was further stated that we should not "lose sight of the fact that this fraternal order is made up of a great many thousands of persons whose insurance rights can only be protected and saved by the enforcement by the Sovereign Camp of the rules, the by-laws, and the constitution of the order which the members themselves have adopted." See, also, *White v. Sovereign Camp, W. O. W.*, *supra*.

The only question involved in this appeal is:

"Did the Court err in refusing to direct a verdict upon the ground that the insured was not in good health when he attempted to reinstate his certificate of insurance by the payment on March 17, 1938, of the monthly installment of premium due for the month of February, for the reason that he was not in good health at the time of such payment, and did not remain in good health for thirty days thereafter

as was required under the Constitution and laws of the defendant society and as he warranted under his contract of insurance?"

It has been held by this Court that the provision with reference to good health contained in the constitution and by-laws of appellant, which constitution and by-laws are made a part of the contract, is a warranty and not a representation.

In *Nix v. Sovereign Camp, W. O. W.,* 180 S. C., 153, 185 S. E., 175, we find:

"The legal effect of warranty and the distinction between warranties and representations is clearly set forth in the opinion of this Court in *Kizer v. Woodmen of the World,* 177 S. C., 70, 180 S. E., 804, 807, where the Court says: 'The difference between warranties and representations is often very vital. Construed as a warranty, the falsity of the statement amounts to an express breach of the contract, regardless of the good faith and honest purpose of the insured, and the statement does not have to be material, it has been held in some cases; construed as a representation, the falsity of the statement may render the contract voidable when it is shown to have been material to the risk and knowingly made. A representation is usually made in proposing a contract; a warranty is made when it 'is a part of the completed contract, either expressly inserted therein, or appearing therein by express reference to statements expressly made a part thereof. 3 Joyce, Inc. (2d Ed.), No. 1882, and cases cited thereunder.' "

This Court has also held that the term "good health" when used in a policy of life insurance means "that the applicant has no grave, important, or serious disease, and is free from ailment that seriously affects the general soundness and healthfulness of the system"; and that "the actual and not merely the apparent health" of the applicant is controlling.

See *Cooley v. Metropolitan Life Insurance Co.,* 153 S. C., 280, 150 S. E., 793; *Nix v. Sovereign Camp, W. O. W.,*

*supra. Crocker v. Life·Ins. Co. of Va.,* 183 S. C., 439; 191 S. E., 312.

If the only reasonable inference to be drawn from the testimony is that the insured was not in good health when he attempted to reinstate his policy by paying the installment premium for the month of February, 1938, on March 17, 1938, and did not remain in good health for a period of thirty days thereafter, applying the law as hereinbefore stated, then the appellant was entitled to a directed verdict.

The insured, Lucius P. Sauls, did not pay his February, 1938, premium until March 17, 1938, He thereby warranted not only that he was then in good health, but· that he would remain in good health for thirty days, or until and through April 16, 1938.

Mr. Sauls died on June 22, 1938. In the "proof of death" papers (affidavit of beneficiary) it was stated that the duration of Mr. Sauls' last illness was about ten months. When Mrs. Sauls, the affiant, was on the witness stand she denied that she had told a Mr. Blanton, the secretary of the local camp, and the one who prepared the proof papers, that her husband had been sick for ten months as he had written in the "proof of death" papers, but stated she had told him ten weeks. Ten weeks, no more, no less, prior to June 22, would be April 13. The last day Mr. Sauls worked, according to the testimony of respondent, was April 14. Dr. H. M. Eargle, a witness for appellant, testified he was called to the home of the insured on April 18, took a history of his trouble, gave him some medicine to take, and told him to come to his office if he did not improve. Two days later, the insured went to the office of Dr. Eargle and was advised to go to the hospital. It was brought out on cross examination of Dr. Eargle that when he saw Mr. Sauls at his home on April 18, he had been confined to his bed for three days according to the history given him by Mr. Sauls. Mr. Sauls was admitted to a hospital on April 20, and Dr. Eargle had Dr. Boatright, a surgeon, see him. Dr. Boat-

right advised an exploratory laparotomy. We now quote from the testimony of Dr. Eargle:

"Q. What was done?

"A. He operated on him.

"Q. Were you present?

"A. Yes, sir.

"Q. Did you make a diagnosis at that time?

"A. No, sir.

"Mr. Hydrick: We would object to a diagnosis made by someone else.

"The Court: He could not tell that.

"The Witness: Dr. Boatright showed me what he found at the time. I was standing pretty close by, not able to handle the tissues; that sort of thing. Dr. Boatright showed me what he found, as much as he could.

"Q. What did Dr. Boatright call—

"Mr. Hydrick: We object to that.

"The Court: He can tell what he saw and knows.

"The Witness:

"A. It appeared to me cancer of the stomach.

"Mr. Lide to the witness:

"Q. From your observation of the operation and the examination what was your conclusion?

"A. Operation, and the finding from the operation, history all led up to a cancer of the stomach."

Dr. Eargle filled out the "Certificate of Attending Physician, Proofs of Death", which was forwarded appellant, in which he stated he treated deceased for carcinoma of stomach, and deceased was confined to his house or prevented from attending to his business from April 15, 1938. On cross examination Dr. Eargle was asked: "You would not swear of your own knowledge that he did have cancer?" To which he answered: "All I have to go on was growth pathology. I don't think anybody on growth pathology could say it was a certain thing."

Immediately following and on re-direct examination:

"Q. Tell us whether or not your opinion on that is a physician's opinion and could it be anything else except opinion?

"A. As to cancer of the stomach?

"Q. Yes, sir?

"A. I am pretty certain that is correct.

"Q. When you examine a patient that is an objective symptom?

"A. Yes, sir.

"Q. The other is subjective symptom?

"A. Yes, sir.

"Q. Tell us about the two methods?

"A. Take this morning for example—

"Mr. Hydrick: I don't want him to just speculate.

"Mr. Lide to the witness:

"Q. Would his symptoms indicate anything as to the nature of the disease before the operation?

"A. Yes, sir; some disturbances of the stomach.

"Q. Was there anything developed from the symptoms and the operation in the case to indicate the duration of this trouble?

"A. That is a hard question to answer. We can't tell how long these things have existed.

"Q. Some develop faster than others?

"A. Yes, sir.

"Q. Would the condition of the patient be such as you could reach a conclusion or opinion as to the time it had existed?

"A. I can't say. Some period of time.

"Q. You can't say how long?

"A. Yes, sir."

Viewing the foregoing testimony and the other evidence in the case most favorably from respondent's standpoint, we are yet forced to the conclusion that the only reasonable inference to be drawn therefrom is that the insured was not

actually in good health for thirty days after March 17, 1938; that prior to April 16, 1938, he had a grave, important, or serious disease, and was not free from ailment that seriously affected the general soundness and healthfulness of his system.

The insured departed this life no doubt in the belief that his policy of insurance was in force, and we confess that we have most reluctantly reached the above-stated conclusion. However, the power of the Courts is limited to the enforcement of contracts, if within the law, according to the terms thereof, unless there be a waiver of the pleaded provisions, but as aforesaid, there is no issue of waiver before the Court.

The following taken from *Pilot Life Ins. Co. v. Peebles et al.,* 191 S. C., 486, 5 S. E. (2d), 174, is most applicable to this case:

"The time of payment of premiums is material and of the very essence of the contract. Courts cannot with safety vary the stipulation of the parties by introducing equities for the relief of the insured against their own negligence."

The case is remanded, with instructions to enter judgment in favor of appellant, under Rule 27.

MESSRS. JUSTICES CARTER, BONHAM and FISHBURNE concur.

MR. CHIEF JUSTICE STABLER did not participate in the decision of this case.

ORDER ON PETITION FOR REHEARING

April 23, 1940

A further study of the record leaves no doubt in our minds that this case was correctly decided. We again express our sympathy for respondent, but in the trial of the case below respondent and appellant stood squarely upon the contract of insurance without respondent attempting to raise the issue of whether appellant had waived strict compliance

with the provisions thereof, and by that contract, viewing the testimony most favorable to respondent, she is not entitled to recover.

The petition for rehearing is dismissed.

M. L. BONHAM, C. J.,
JESSE F. CARTER, A. J.,
D. GORDON BAKER, A. J.,
E. L. FISHBURNE, A. J.